[Crim. No. 13795. In Bank. July 9, 1970.]

In re JOHN ALEXANDER SMITH on Habeas Corpus.

194

## COUNSEL

John Alexander Smith, in pro. per., and Daniel H. Dibert, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and George R. Nock, Deputy Attorney General, for Respondent.

## OPINION

MOSK, J.—Petitioner, John Alexander Smith, is presently incarcerated at San Quentin under sentence imposed in 1967 after he was convicted of two counts of kidnaping (Pen. Code, § 207), one count of rape (Pen. Code, § 261, subd. 3), and one count of attempted kidnaping (Pen. Code, §§ 207 and 664). We issued an order to show cause in response to his petition in propria persona for a writ of habeas corpus to consider the contention that he was deprived of his right to the effective assistance of counsel on appeal. This is a case of first impression on the subject of incompetency of appellate counsel.

The crimes of which petitioner was convicted occurred between November 1, 1966, and February 1, 1967, in Los Angeles. On November 1, Miss Audrey George, while waiting for a bus, was accosted from behind by a man. He pressed a file to her neck and compelled her to walk about a block and a half to a vacant house, where he forcibly committed an act of sexual intercourse upon her. He then walked with her back to the vicinity of the bus stop and permitted her to call a friend to pick her up. At a lineup in February 1967, Miss George identified petitioner as her assailant.

At the trial, she again identified petitioner and confirmed her lineup identification.

On January 21, 1967, Mrs. Carla Braswell was approached by a man on the sidewalk after she had parked and locked her car near her home. After asking directions, the man grabbed her arm and brandished a screwdriver. He ordered her to unlock the door on the driver's side of her automobile, and told her "that we were going in my car." Mrs. Braswell indicated that she was too frightened to unlock the door and she gave her purse to her assailant, telling him to do it. While he searched for the keys, another car pulled alongside and during the confusion Mrs. Braswell was able to escape to her home. At the February lineup, Mrs. Braswell did not unequivocally identify petitioner as her assailant, but she was positive at the trial.

At 11 p.m. on February 1, Miss Delores Burton was grabbed from behind by a man and threatened with a screwdriver held to her neck. She was forced to walk to an alley about two blocks away, where she was told to take off her clothes. She removed her coat, but when an automobile light at the end of the alley prompted the attacker to retrieve the screwdriver he had put down, Miss Burton was able to escape. She ran to a nearby market with the attacker in pursuit, but he did not enter the market. John Wesley saw Miss Burton being chased and described her assailant to the police. Miss Burton identified petitioner at a lineup and in court as the man who attacked her. Wesley could not make a positive identification.

Petitioner was arrested on February 1, about a half hour after the Burton incident. He was walking near the market where Miss Burton had fled and he was wearing a blue shirt, dark pants, and a hat, with a dark coat over his arm. He was perspiring. Miss Burton was brought to the police station to identify him that night.

In April 1967, petitioner was tried by the court and was convicted of the kidnaping and rape of Miss George, the attempted kidnaping of Mrs. Braswell, and the kidnaping of Miss Burton. His defense was alibi on the occasions of all three offenses. The convictions were affirmed on appeal (*People* v. *Smith* (1968) 263 Cal.App.2d 631 [69 Cal.Rptr. 670]), and no petition for hearing was filed.

Petitioner contends that he was denied the effective assistance of counsel in his appeal because his court-appointed appellate counsel was incompetent and failed to raise substantial allegations of error which arguably might have resulted in reversal of his convictions. We have not previously considered the problem of incompetent appellate counsel, although we

have analyzed the related subjects of incompetent trial counsel (*In re Williams* (1969) 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984]; *People v. McDowell* (1968) 69 Cal.2d 737 [73 Cal.Rptr. 1, 447 P.2d 97]; *People v. Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]) and the standards for withdrawal of appellate counsel in frivolous appeals (e.g., *People v. Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]).

In *Anders v. California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], the United States Supreme Court overturned California's procedure which permitted appointed appellate counsel to withdraw from criminal appeals upon filing a no-merit letter. In so doing, the court promulgated a standard for the conduct of appointed appellate counsel to protect the rights of indigent defendants to due process and equal protection: ". . . California's procedure did not furnish petitioner with counsel acting in the role of an advocate nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity. . . . The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*." (*Id.* at pp. 743, 744 [18 L.Ed.2d at pp. 497, 498]; see also *Entsminger v. Iowa* (1967) 386 U.S. 748 [18 L.Ed.2d 501, 87 S.Ct. 1402].)

We responded to the court's mandate in *People v. Feggans* (1967) *supra*, 67 Cal.2d 444, and set down the specific duties of appointed appellate counsel to meet their obligations as advocates. ■ "Counsel must prepare a brief to assist the court in understanding the facts and the legal issues in the case. The brief must set forth a statement of the facts with citations to the transcript, discuss the legal issues with citations of appropriate authority, and argue all issues that are arguable. ■ Moreover, counsel serves both the court and his client by advocating changes in the law if argument can be made supporting change. ■ If counsel concludes that there are no arguable issues and the appeal is frivolous, he may limit his brief to a statement of the facts and applicable law and may ask to withdraw from the case, but he must not argue the case against his client. Counsel is not allowed to withdraw from the case until the court is satisfied that he has discharged his duty to the court and his client to set forth adequately the facts and issues involved. ■ If counsel is allowed to withdraw, defendant must be given an opportunity to present a brief, and thereafter the court must decide for itself whether the appeal is frivolous. [Citations.] If any contention raised is reasonably arguable, no matter how the court feels it will probably be resolved, the court must appoint another counsel to argue the appeal." (*Id.* at pp. 447-448.)

■ Judged by the foregoing criteria, representation by the appointed counsel for petitioner before the Court of Appeal was demonstrably inadequate. Indeed, petitioner would have fared better had his attorney withdrawn in favor of a pro se brief from petitioner, despite petitioner's acknowledged legal ineptitude. In a case bristling with arguable claims of error, petitioner's counsel filed an opening brief consisting of a 20-page recitation of the facts and a one-page argument. The purported argument consisted of the ludicrous proposition that petitioner was entitled to a reversal on all counts because the People had failed to expressly prove that petitioner was not married to Audrey George, the young lady he was convicted of raping. The contention posed little obstacle to affirmance since the petitioner had testified at the trial that he was single, the victim stated that she had never had sexual intercourse prior to the rape, both prosecution and defense attorneys repeatedly referred to the victim as "Miss," and all of the evidence implicitly indicated that petitioner and the victim were total strangers prior to the criminal episode. The effect of the meritless argument was an affirmation by appellate counsel that his client's appeal was frivolous.

■ Of course, an appellate counsel is not to be held responsible for an actual frivolous appeal by his client, and we do not hold that *Anders* and *Feggans* require the advocate to contrive arguable issues. But in the instant action, each of the counts on which petitioner was convicted was potentially vulnerable to legitimate and provocative appellate contentions that should have been manifest to an alert and responsive attorney.

■ It would appear elementary that the lineup identification of petitioner by Delores Burton be subjected to appellate scrutiny.[1] On the night of the incident, Miss Burton was taken to the police station to determine if petitioner, arrested shortly after Miss Burton's escape, was the assailant. Petitioner was exhibited to Miss Burton in a room occupied only by him and a police officer. She was asked if petitioner was the man who had attacked her and she responded affirmatively. Immediately thereafter petitioner was placed in a lineup and Miss Burton identified him again.

In *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], decided six months before petitioner's opening brief on appeal was filed, the Supreme Court considered whether the one-man showup used to identify the defendant in that case "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." (*Id.* at p. 302 [18 L.Ed.2d at p. 1206].) The court

---

[1]The issue was so apparent that the Attorney General felt constrained to discuss it in his response even though not raised in the appellant's brief. Nevertheless, petitioner's counsel did not file a reply brief even after the issue had thus been exposed.

held the procedure did not violate due process because it was necessary to exhibit the defendant to the victim immediately at the hospital; she was unable to be moved and might not live until a normal lineup could be arranged. In *People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336], decided about a week before petitioner's opening brief was filed but more than three months prior to the Attorney General's reply brief, we reversed a conviction on the ground that the defendant was identified "as the driver of the robbery car in a lineup so unfairly conducted that it deprived him of due process of law." (*Id.* at p. 189.) Applying the analysis of *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], as well as *Stovall,* we held that the suggestive lineup identifications by the witnesses "tainted" the subsequent in-court identifications of defendant by those witnesses and necessitated a reversal.

It requires a minimum of analysis to note the potential application of *Stovall* and *Caruso* to the procedure by which Miss Burton identified petitioner. Whether the one-man showup was required by exigent circumstances and whether it affected the subsequent lineup identification are issues that necessarily flow from the factual circumstances. Certainly it should have been contended that this procedure violated the due process standards recognized by *Stovall* and *Caruso*.[2]

The evidence was conflicting as to whether the lineup procedure "tainted" Miss Burton's in-court identification. On the one hand, her only opportunity to see her assailant's face during the episode was when he bent down to pick up the screwdriver. Although she stated this glimpse lasted for "a minute or two," that is very unlikely since she testified that she made her escape during the same period; it could be urged that she meant only "a second or two." Also, Miss Burton told the police her assailant was a Negro approximately 20 or 22 years old, about five feet six inches tall, and weighing about 150 pounds. In fact, petitioner is six feet tall and weighs about 180 pounds. On the other hand, Miss Burton did accurately describe the clothing worn by petitioner when he was arrested, petitioner fit the description given by John Wesley as to clothing and build, and the assailant's appearance was fresh in Miss Burton's mind when she identified him at the police station. We do not presume to decide

---

[2]The fact that petitioner's trial preceded both *Stovall* and *Caruso* posed no obstacle to arguing those cases on appeal. Trial counsel's failure to object to the in-court identification by Miss Burton or to her references to the lineup identification was obviously excusable, and *Stovall* was nevertheless applicable to the appeal. (*People* v. *Menchaca* (1968) 264 Cal.App.2d 642, 645 [70 Cal.Rptr. 843]; *People* v. *Douglas* (1968) 259 Cal.App.2d 694, 697 and fn. 7 [66 Cal.Rptr. 492].)

the factual issue in this context, but even if a presentation based on *Stovall* and *Caruso* might not have compelled reversal, counsel's failure to raise the issue is not justified, nor does the possibility of defeat render the omission any the less a denial of effective appellate assistance.

 Petitioner's conviction of attempted kidnaping in the episode involving Mrs. Braswell was likewise subject to plausible assignments of error. ██ It is well settled that "[t]o constitute an attempt, there must be (a) the specific intent to commit a particular crime, and (b) a direct ineffectual act done towards its commission. . . . To amount to an attempt the act or acts must go further than mere *preparation;* they must be such as would ordinarily result in the crime except for the interruption." (1 Witkin, Cal. Crimes (1963) § 93, at p. 90.)

 It is at least arguable that petitioner's conduct in regard to Mrs. Braswell exhibited neither the intent nor the action requisite to an attempted kidnaping. The only direct evidence of his intention was his statement, paraphrased by Mrs. Braswell, as follows: "Then he told me to unlock my car door, that we were going in my car." Certainly, it could be maintained that this statement is not an unequivocal expression of an intention to abduct Mrs. Braswell, unless moving her from the sidewalk to the inside of the car was sufficient to constitute kidnaping. Also plausible was the inference that petitioner intended to rape his victim inside her car without driving it away, or that he intended to steal from her person or her car. Furthermore, petitioner's actions to effectuate his criminal purpose arguably did not reach that stage of development beyond mere preparation. His search for the keys might as logically have been for the purpose of robbing or sexually assaulting his victim, rather than kidnaping her.

 The sufficiency of Mrs. Braswell's in-court identification of petitioner cried out for appellate analysis. Mrs. Braswell was unable or unwilling to positively identify petitioner at the lineup in February, but she did identify him at the trial. On redirect examination, the following colloquy occurred between her and the prosecuting attorney:

"Q. What is it today—what is it about him today that makes you say you are positive?

"A. Well, I haven't heard the other witnesses but I did get a refresher and some of the things are similar and he looks so much like him and I just think that he is the one.

"Mr. Imerman: Very well. I have nothing further.

"The Court: You say you think he is the one?

"The Witness: Well, I know that he is or he wouldn't be here."

On recross-examination, defense counsel tried to clarify what the "refresher" was, but Mrs. Braswell was evasive. She insisted that she was positive that petitioner was her assailant even at the time of the lineup, but that for unexplained reasons she had not wanted to inform the police.

The explanations given by Mrs. Braswell for her positive in-court identification of petitioner—a "refresher" and the fact that he was "here" on trial—should have alerted appellate counsel to discuss the credibility of her identification and the sufficiency of the evidence to support the judgment of conviction of attempted kidnaping. It is astonishing that the appellate brief contained no discussion relevant to the attempted kidnaping conviction.

■ The conviction of petitioner for the kidnaping and rape of Miss George was the only aspect of the case to which appellate counsel gave any attention in his brief. Unfortunately, the lone issue counsel chose to raise was so perceptibly weak that it probably would have been better overlooked. Clearly there were assignments of error that arguably might have justified a reversal. Miss George identified petitioner at a lineup in February of 1967 and again at the trial. Two aspects of the lineup procedure should have been discussed on appeal. First, Miss George testified that immediately before the lineup she was shown a small number of photographs, one of which resembled petitioner. She did not identify any of the suspects pictured, but she did state that none of the pictures resembled any of the other men in the lineup. One could argue that the photographs were used to "prime" Miss George to pick out petitioner in the subsequent lineup, and that it is difficult to rationalize showing photographs immediately before a lineup, with the attendant danger of undue suggestion to the witness.

A second possible deficiency in the lineup procedure is apparent from Miss George's testimony on cross-examination that only petitioner among the four persons in the police lineup matched her description of the assailant. In *Caruso,* we reversed because none of the other participants in the lineup besides defendant were of his size or had his complexion or dark wavy hair, so that the witness who had described a man with those physical characteristics would be unfairly influenced to select the defendant. In the instant action, Miss George's testimony raises the possibility that a similar infirmity might have affected her lineup identification of petitioner, but further questioning by counsel or the court was necessary to make this evident. In *People* v. *Douglas* (1968) *supra,* 259 Cal.App.2d 694, the Court of Appeal reversed a conviction because the defendant

had been identified in a lineup which might have been unduly suggestive and the factual conflict on the question had not been resolved by the trial court. The appellate court noted that the trial judge could not have been expected to resolve the conflict on the suggestiveness of the lineup procedure because the trial preceded *Stovall, Wade,* and *Gilbert,* but it nevertheless reversed. The court instructed the trial court on retrial to resolve the conflict on the question of the suggestiveness of the lineup at the outset and then, if the lineup was found to be unfair, to give the People an opportunity to prove an independent origin for the in-court identifications.

Taken together, *Caruso* and *Douglas,* both decided several months prior to the filing of the People's brief and cited therein, should have provided an authoritative nucleus from which to criticize the rape conviction on appeal. Combined with an attack on the Burton lineup procedure, the foregoing argument might have swayed the appellate court to reverse.

We have catalogued the arguments which petitioner's counsel failed to offer on behalf of his client, not because we conclude that petitioner was likely to obtain a reversal on appeal, but only to demonstrate that his appellate counsel did not render the thoughtful assistance to which he was entitled. ▮ Petitioner need not establish that he was entitled to reversal in order to show prejudice in the denial of counsel. In *People* v. *Ibarra* (1963) *supra,* 60 Cal.2d 460, we did not indicate that the "crucial defense" withdrawn by defendant's incompetent trial counsel would have resulted in a verdict for defendant or even in suppression of the evidence seized by the police. Rather, we held that "[c]ounsel's failure to object precluded resolution of the crucial factual issues supporting defendant's primary defense." (*Id.* at p. 466.) The defense was crucial because it arguably might have produced a verdict for defendant, not because it would have inevitably achieved a favorable result. Similarly, in *Anders* v. *California* (1967) *supra,* 386 U.S. 738, 743 [18 L.Ed.2d 493, 497], the Supreme Court found sufficient prejudice to petitioner in the fact that withdrawal of his appellate counsel deprived him of the opportunity to argue that comment by the judge on his failure to testify was unconstitutional—a contention not accepted by the court until five years after the date of petitioner's appeal.

▮ In the instant action we hold that the inexcusable failure of petitioner's appellate counsel to raise crucial assignments of error, which arguably might have resulted in a reversal, deprived petitioner of the

effective assistance of appellate counsel to which he was entitled under the Constitution.

We do not suggest that failure of appellate counsel in a future case to raise any or all of the specific potential assignments of error discussed above will establish that the appellant was denied effective assistance of counsel. Future cases must be decided on their own facts, and the determination of each will depend on whether the appellant's counsel failed to raise assignments of error which were crucial in the context of the particular circumstances at hand. Nor do we decide in the instant case whether failure to raise any one of the several assignments of error overlooked by appellate counsel would have indicated ineffective assistance; we hold only that failure to raise all of them constituted such indicium.

The People contend that in actuality petitioner was not deprived of any crucial assignment of error by the incompetence of his counsel because the People's brief raised the issue of the Burton one-man showup and the Court of Appeal considered the issue and found no denial of due process. We are unpersuaded by that rejoinder. First, our foregoing discussion of the potentially successful contentions on appeal available to petitioner demonstrates that his counsel's incompetence deprived him of more than one crucial assignment of error. Second, the fact that the Court of Appeal found no denial of due process in the lineup procedure on the basis of the unilateral presentation through respondent's brief does not indicate that the court necessarily would have reached the same result if the point had been adversitively argued by petitioner's counsel. Adoption of the Attorney General's view would dilute the importance of appellate counsel in the protection of the rights of criminal defendants—the basis of the decisions in *Anders* and *Feggans*. As Chief Justice Burger has written: "[U]nder our adversary system an appellate court cannot function efficiently without lawyers to present whatever there is to be said on behalf of an appellant, however meager his claims may be, so that the Court can make an informed appraisal." (*Johnson* v. *United States* (1966) 360 F.2d 844, 847 [124 App.D.C. 29], concurring opinion.)[3]

We therefore treat the petition for habeas corpus as an application to recall the remittitur in 2 Crim. No. 13991, *People* v. *Smith, supra*, 263 Cal.App.2d

---

[3]Neither the admonition of the Chief Justice nor our opinion is intended to prevent the court raising and disposing of matters not briefed. When an appellate court, in the course of its normal decision-making process, discovers a crucial matter ignored by appellate counsel which should have been raised as an assignment of error, the court ordinarily will solicit supplemental briefs. Of course, matters of lesser significance, which would not qualify as crucial elements in the case being decided, need not be briefed and may be raised and disposed of on the court's own initiative.

631. The matter is transferred to the Court of Appeal, Second District, Division One, with directions to recall its remittitur, vacate its decision, reinstate the appeal, and appoint other counsel for appellant. The order to show cause heretofore issued is discharged and the petition is denied.

Wright, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied October 1, 1970. Wright, C. J., McComb, J., and Burke, J., were of the opinion that the petition should be granted.