[No. A086415. First Dist., Div. Five. Feb. 4, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
RUSSELL STURNS, Defendant and Appellant.

**COUNSEL**

Stephen Chapman Matchett, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, and Raymond Cardozo, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—Russell Sturns entered a plea of nolo contendere to possession of a controlled substance in violation of Health and Safety Code section 11350, subdivision (a). After sentencing, Sturns filed a notice of appeal but did not seek a certificate of probable cause from the trial court. (See Pen. Code, § 1237.5[1]; Cal. Rules of Court, rule 31(d).[2])

More than six months after the time for seeking a certificate of probable cause had expired (see rule 31(d)), Sturns applied to this court for relief from his default so that he could belatedly seek such a certificate. We initially denied Sturns's motion. Sturns moved for reconsideration and we granted his request.

Pursuant to rule 45(e), a "reviewing court for good cause may relieve a party from a default occasioned by any failure to comply with [the California Rules of Court], except the failure to give timely notice of appeal." Sturns urges us to find good cause because he relied on his attorney to perfect the appeal. Under Sturns's notion of good cause, the length of defense counsel's delay in seeking such relief and the reasons for that delay are not relevant.

We reject Sturns's construction of the good cause requirement and conclude that a defendant's expectation that his counsel will file an appeal raising a certificate-dependent issue does not necessarily constitute good cause. Under the facts of this case, the delay between entry of judgment and the request for relief from default and the absence of compelling reasons for that delay prevent us from finding good cause. We deny Sturns's application for relief from default.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 1996, the District Attorney for San Mateo County filed an information charging Sturns with possession of a controlled substance in violation of Health and Safety Code section 11350, subdivision (a). The information also alleged seven prior felony convictions, including a violation of section 451, subdivision (d), arson of property. The section 451 prior was alleged to be a "strike" within the meaning of section 1170.12, subdivision (c)(1). The information further alleged that Sturns served two prior separate prison terms for felony convictions, each warranting a sentence enhancement under section 667.5, subdivision (b).

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.
[2]Unless otherwise indicated, all further rule references are to the California Rules of Court.

On December 26, 1996, Sturns entered a plea of not guilty. Sturns also denied all of the special allegations.

On April 11, 1997, Sturns moved to dismiss the section 451 prior conviction allegation, a conviction which had also been based on a nolo contendere plea. Sturns urged that the section 451 prior conviction be dismissed as a strike on the ground that the court taking the plea of nolo contendere to the section 451 offense allegedly misadvised Sturns as to the consequences of entering that plea. On May 2, 1997, the trial court denied Sturns's motion to dismiss the section 451 prior conviction.

In early May 1998,[3] Sturns changed his plea to nolo contendere. Sturns admitted a prior conviction for violating section 451 and that the section 451 conviction constituted a strike within the meaning of section 1170.12, subdivision (c)(1). In exchange for this plea, the People agreed to dismiss all other special allegations.

On February 3, 1999, the trial court sentenced Sturns. Relying on *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], Sturns requested that the trial court strike the section 451 prior that he had admitted at the time of his change of plea. The court denied Sturns's request and imposed a sentence of 32 months, calculated as 16 months doubled pursuant to section 1170.12, subdivision (c)(1).

On March 1, 1999, Sturns filed a notice of appeal. His notice indicated that he "appeal[ed] from the conviction and judgment" and "appeal[ed] in particular from the imposition of a prior conviction alleged pursuant to Penal Code section 1170.12 enhancing term of imprisonment."

On May 18, 1999, this court appointed counsel for Sturns. The opening brief on appeal was initially due on July 12, 1999. On October 8, 1999, after receiving three extensions of time to file his opening brief, Sturns filed an application for relief from default for failure to comply with rule 31(d). Sturns's application sought leave to obtain a certificate of probable cause on the issue of whether his section 451 prior should have been dismissed due to alleged misadvisement of the consequences of his plea.

Sturns's application was supported by his declaration and a declaration by his trial counsel. The declaration of Sturns's trial counsel stated that counsel intended that the notice of appeal should be interpreted as "challenging the court's denial of our motion in which we had sought to have the 'strike'

---

[3]The clerk's transcript indicates that the change of plea occurred on May 6, but the relevant reporter's transcript indicates that the change of plea occurred on May 4.

allegation dismissed based on the affirmative misadvisement Mr. Sturns received in 1994 as to the consequences of his plea to the arson charge" and not as "limited to challenging the court's abuse of discretion in denying our *Romero* motion at sentencing." The declaration further stated: "I did not seek a certificate of probable cause in connection with Mr. Sturns' appeal, under Penal Code section 1237.5 (see also Cal. Rules of Ct., rule 31, subd. (d)), because I believed, and continue to believe, that since the intended claims were matters pertaining to his sentence, the requirement set forth in that section did not apply. It was not my intent that by failing to obtain a certificate of probable cause Mr. Sturns should be foreclosed from appealing the denial of his motion to dismiss the 'strike' allegation based on his misadvisement about the consequences of his prior plea."

Sturns's declaration was consistent with that of his trial counsel: "I relied on my lawyer at the time . . . to get my appeal started, which he apparently did by filing a notice of appeal on March 1, 1999. I understood, and intended, that on my appeal I would be able to challenge not only the denial of my *Romero* motion, but also the denial of my original motion to dismiss the 'strike' allegation . . . based on the incorrect advisement of consequences that I received when I entered my plea in 1994." Sturns also explained his reliance on his attorney: "I am unschooled in the law, and I did not know that my appeal of the denial of the motion described in paragraph 2 could possibly be barred if I failed to obtain a 'certificate of probable cause.' If any such action was required on my part, I relied completely on [my trial counsel] to let me know, or to take care of it as my lawyer. By failing to obtain such a certificate, I did not intend to waive my right to appeal the denial of my motion to dismiss the 'strike' allegation based on my misadvisement as to the consequences of my 1994 no-contest plea."

The People opposed the application for relief from default in part due to the considerable delay of appellate counsel in making the application. In response to the People's opposition, Sturns's appellate counsel filed a declaration explaining that he was appointed to represent Sturns on May 18, 1999, and that he received the record on or about June 18, 1999. Appellate counsel admitted that "the lack of any certificate of probable cause was apparent to [him] upon [his] review of the record" in June. However, appellate counsel waited to seek relief from default until after he consulted with the First District Appellate Project (FDAP), reviewed an interlocutory writ that Sturns had earlier filed on this same issue, and further consulted with FDAP. Additional delay occurred due to a number of reasons, including the vacation schedule of the FDAP staff attorney who was assisting appellate counsel and appellate counsel's workload, vacation schedule, dental work and jury duty. In sum, appellate counsel accepted full responsibility for the delay.

## II. Discussion

### A. *The section 1237.5 certification requirement applies to the issue that Sturns seeks to raise.*

The Penal Code in conjunction with the California Rules of Court places special limits on the filing of an appeal following a plea of guilty or nolo contendere. Section 1237.5 provides that "[n]o appeal shall be taken by the defendant from a judgment of conviction [in the superior court] upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury[,] showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

"Rule 31(d), first paragraph, implements section 1237.5 by providing, in pertinent part, that the defendant may not take or prosecute an appeal unless he has filed the statement of certificate grounds as an intended notice of appeal within 60 days after rendition of judgment, and has obtained a certificate of probable cause for the appeal within 20 days after filing of the statement and, hence, within a maximum of 80 days after rendition of judgment. [Citations.]" (*People v. Mendez* (1999) 19 Cal.4th 1084, 1095 [81 Cal.Rptr.2d 301, 969 P.2d 146].)[4]

"Section 1237.5 has been held to admit" exceptions to the general rule. (*People v. Lloyd* (1998) 17 Cal.4th 658, 663 [72 Cal.Rptr.2d 224, 951 P.2d 1191].) The second paragraph of rule 31(d) implements these exceptions by providing as follows: "If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere [in superior court] is based solely upon grounds (1) occurring after entry of the plea which do not challenge its validity or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code, the provisions of section 1237.5 of the Penal Code requiring a statement by the defendant and a certificate of probable cause by the trial court are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds." (Rule 31(d); see also *Lloyd, supra,* 17 Cal.4th at p. 664.)

---

[4]"If a judgment of conviction is entered upon a plea of guilty or nolo contendere, the defendant shall, within 60 days after the judgment is rendered, file as an intended notice of appeal the statement required by section 1237.5 of the Penal Code; but the appeal shall not be operative unless the trial court executes and files the certificate of probable cause required by that section. Within 20 days after the defendant files the statement the trial court shall execute and file either a certificate of probable cause or an order denying a certificate and shall forthwith notify the parties of the granting or denial of the certificate." (Rule 31(d).)

■ Sturns's appellate counsel and the People do not dispute that section 1237.5 and rule 31(d) require Sturns to obtain a certificate of probable cause before he may raise the issue of whether his section 451 conviction constitutes a strike for purposes of section 1170.12, subdivision (c)(1). Sturns's trial counsel, however, believed and apparently continues to believe that a certificate of probable cause is not necessary in order to raise this issue on appeal. We therefore briefly address the applicability of section 1237.5 and rule 31(d).

In *People v. Panizzon* (1996) 13 Cal.4th 68 [51 Cal.Rptr.2d 851, 913 P.2d 1061], our Supreme Court held that a challenge attacking an integral part of the plea is, in substance, "a challenge to the validity of the plea, which requires compliance with the probable cause certificate requirements of section 1237.5 and rule 31(d)." (*People v. Panizzon, supra*, at p. 73.) The challenge in *Panizzon* focused on the term of imprisonment to which the defendant had agreed as part of his plea agreement. (*Ibid.*)

The issue that Sturns seeks to raise in this appeal also challenges the validity of his plea. In exchange for Sturns's plea of nolo contendere and his admission of a prior strike conviction within the meaning of section 1170.12, subdivision (c)(1), the People agreed to dismiss the other special allegations set forth in the information. By challenging whether his prior section 451 conviction constitutes a strike within the meaning of section 1170.12, subdivision (c)(1), Sturns attacks an element of his plea agreement. Pursuant to *Panizzon,* Sturns may not make such a challenge without first obtaining a certificate of probable cause. (*Panizzon, supra,* 13 Cal.4th at p. 73.)

*People v. Arwood* (1985) 165 Cal.App.3d 167 [211 Cal.Rptr. 307], although decided a decade before the *Panizzon* decision, supports this result as well. In *Arwood,* "appellant entered a plea of nolo contendere to [a] forcible rape count, and admitted the truth of the prior felony conviction of assault with a deadly weapon involving personal use of the deadly weapon. In exchange for his plea, the prosecution agreed to dismiss the remaining charge and prior felony allegation, and to strike the upper term for the rape count so that appellant would receive no greater than its midterm of six years in addition to section 667's five-year enhancement for the admitted prior serious felony conviction." (*Arwood, supra,* 165 Cal.App.3d at p. 170.) Arwood was sentenced to an 11-year term of imprisonment in accordance with the plea agreement. (*Ibid.*)

On appeal, Arwood sought to challenge "the imposition of the five-year enhancement, arguing that his prior conviction of assault with a deadly weapon is not a 'serious felony' within the meaning of section 667 and

should therefore be stricken." (*People v. Arwood, supra,* 165 Cal.App.3d at p. 171.) Arwood contended that "his challenge goes only to the validity of the sentence imposed and that the provisions of section 1237.5 are inapplicable to him in accordance with rule 31(d) because the judicial act of sentencing occurred *after* entry of his nolo contendere plea." (*Arwood, supra,* 165 Cal.App.3d at p. 172, italics in original.) The appellate court rejected Arwood's argument, explaining that the "argument ignores the fact that imposition of the enhancement related back to his admission of the prior felony conviction, which occurred at the time he entered the plea." (*Ibid.*; see also *People v. Perry* (1984) 162 Cal.App.3d 1147, 1151 [209 Cal.Rptr. 414] ["an appeal which questions proceedings before appellant's admission of the use of a firearm must comply with section 1237.5" (fn. omitted)].)

The facts of this case are strikingly similar to the facts of *Arwood.* We find the reasoning and result of *Arwood* persuasive and consistent with *Panizzon.* Sturns's admission of his section 451 conviction and that the section 451 conviction constitutes a strike for the purpose of section 1170.12, subdivision (c)(1)—admissions made pursuant to the plea agreement—preclude review of those facts absent a certificate of probable cause.

B. *Good cause for relief from default has not been shown.*

 Sturns failed to comply with the requirements of section 1237.5 and rule 31(d). Sturns does not request that we excuse him from the obligation to obtain a certificate of probable cause. He instead requests that we grant him leave to file a statement of certificate issues beyond the time limit established by rule 31(d). Such relief is available under rule 45(e), upon a showing of good cause. (See *People v. Ribero* (1971) 4 Cal.3d 55, 65 [92 Cal.Rptr. 692, 480 P.2d 308] [extending time for seeking a certificate of probable cause]; see also *People v. Jones* (1995) 10 Cal.4th 1102, 1112, fn. 5 [43 Cal.Rptr.2d 464, 898 P.2d 910] [acknowledging limitations on appellate review "unless the defendant has obtained a certificate of probable cause, or has sought and obtained relief from default in the reviewing court"]; *People v. Breckenridge* (1992) 5 Cal.App.4th 1096, 1101-1103 [8 Cal.Rptr.2d 1] [implicitly recognizing applicability of rule 45(e), but denying relief on the facts of that case].)[5] Sturns's application therefore principally requires us to consider what constitutes good cause for relief from default.

---

[5]The parties do not dispute that relief under rule 45(e) is available in a proper case. Their dispute focuses instead on whether this case presents a proper instance for the granting of relief. In view of the agreement of the parties and the Supreme Court's recent endorsement of the availability of relief from default, albeit in dicta (see *People v. Jones, supra,* 10 Cal.4th at p. 1112, fn. 5), we have accepted the applicability of rule 45(e).

██ We are aided in that consideration by the many decisions of our Supreme Court that have interpreted and applied section 1237.5 and rule 31(d). Those decisions have often explained that the certificate of probable cause requirement is intended to promote " 'judicial economy' [citation] 'by screening out wholly frivolous guilty [and nolo contendere] plea appeals before time and money are spent' on such matters as the preparation of the record on appeal [citation], the appointment of appellate counsel [citation], and, of course, consideration and decision of the appeal itself." (*People v. Mendez, supra,* 19 Cal.4th 1084, 1095; see also *People v. Panizzon, supra,* 13 Cal.4th at p. 75; *People v. Hoffard* (1995) 10 Cal.4th 1170, 1179 [43 Cal.Rptr.2d 827, 899 P.2d 896].) Those decisions have also reiterated that an appeal is not operative unless the defendant has complied with section 1237.5 and rule 31(d). (See *Mendez, supra,* 19 Cal.4th at p. 1095; *Panizzon, supra,* 13 Cal.4th at p. 75; *Hoffard, supra,* 10 Cal.4th at p. 1179.)

Despite our Supreme Court's repeated pronouncements regarding the purpose of section 1237.5 and rule 31(d), appellate courts disregarded the certificate of probable cause requirement with such regularity that our Supreme Court noted and criticized the practice in *Panizzon.* (*People v. Panizzon, supra,* 13 Cal.4th at p. 89, fn. 15.) The Supreme Court's criticism of the appellate court practice of disregarding the certificate of probable cause requirement apparently did not achieve its desired result, because the Supreme Court again admonished the Courts of Appeal less than three years later. In *People v. Mendez,* our Supreme Court reported that "[a]fter careful consideration, and in confirmation of our most recent decisions on point [citations], and in the face of words and actions on the part of the Courts of Appeal inconsistent therewith [citations], we believe that section 1237.5 and rule 31(d), first paragraph, should be applied in a strict manner." (*Mendez, supra,* 19 Cal.4th at p. 1098.)

The facts of *Mendez* underscore the stringency that the court contemplated. Mendez pleaded guilty to second degree murder in exchange for dismissal of a kidnapping charge and personal use, prior conviction, and prior prison term allegations. (*People v. Mendez, supra,* 19 Cal.4th at pp. 1090-1091.) Immediately after rendition of judgment, Mendez filed a notice of appeal, but he did not file a statement of certificate issues with the superior court until six months after rendition of judgment. (*Id.* at p. 1091.) The trial court thereafter issued a certificate of probable cause. (*Id.* at p. 1092.) In his opening brief in the Court of Appeal, Mendez presented two certificate dependent issues. (*Ibid.*) "On its own motion, the Court of Appeal raised the question of the effect on Mendez's appeal of his failure to comply with section 1237.5 and, in particular, rule 31(d), first paragraph, as to the

certificate issues." (*Ibid.*) The Court of Appeal dismissed Mendez's appeal.[6] (*Ibid.*)

The Supreme Court framed the question before it as follows: "In order to obtain review of certificate issues, must a defendant who has pleaded guilty or nolo contendere to a charge in the superior court, and who seeks to take an appeal from a judgment of conviction entered thereon, have complied with section 1237.5 and rule 31(d), first paragraph, *fully, and, specifically, in a timely fashion?*" (*People v. Mendez, supra,* 19 Cal.4th at p. 1093, italics in original.) The Supreme Court answered the question, "yes." (*Mendez, supra,* 19 Cal.4th at p. 1099.) "[T]he defendant may not obtain review of certificate issues unless he has complied with section 1237.5 and rule 31(d), first paragraph, fully, and, specifically, in a timely fashion—that is to say, unless he has done what they require, how they require, and when they require. Plainly, he has not complied with them fully unless he has complied with them in a timely fashion. For, as indicated, their demands extend beyond *what* and *how* to *when*. If he has complied only 'substantially,' he has not complied sufficiently; and if he has not complied sufficiently, he has not complied at all. [Citation.]" (*Mendez, supra,* 19 Cal.4th at p. 1099, italics in original.)

Further emphasizing the importance of the *timely* filing of a statement of certificate grounds, the Supreme Court explained: "[Permitting] a defendant . . . to file a statement of certificate grounds beyond the period fixed at 60 days after rendition of judgment and to obtain a certificate of probable cause beyond the period fixed at 20 days after filing of the statement and, hence, beyond a maximum of 80 days after rendition of judgment[,] . . . would . . . plainly undermine the very purpose of section 1237.5, which is to promote judicial economy by screening out wholly frivolous guilty and nolo contendere plea appeals, and would even more plainly undermine the purpose of rule 31(d), first paragraph, which is to promote such economy by screening out such appeals in, among other things, a timely fashion. The effectiveness of this screening depends, of course, on whether wholly frivolous appeals, and only wholly frivolous appeals are in fact barred. *That* depends, in turn, on whether the screening is done in a timely fashion. Screening is entrusted, at least in the first instance, to the superior court [citations], which is more likely to make a proper determination if it acts near rendition of judgment, and is less likely to do so if it does not. For the passage of time increases the risk of error, with the result that, as recollection fades, it might screen out an appeal that is not wholly frivolous, or fail

---

[6]Mendez had raised a noncertificate issue in his reply brief, which the Court of Appeal also dismissed (see *People v. Mendez, supra,* 19 Cal.4th at p. 1092), but the reasons for that ruling are not relevant to our analysis here.

to screen out one that is." (*People v. Mendez, supra,* 19 Cal.4th at p. 1103, italics in original.) Thus, even though Mendez had obtained a certificate of probable cause, the Supreme Court affirmed the dismissal of the appeal because Mendez did not obtain the certificate within the time limits of rule 31(d). (*Mendez, supra,* 19 Cal.4th at p. 1104.)

■ Certainly, the Supreme Court did not address the precise issue before us because Mendez had apparently not requested relief from default. However, considering the Supreme Court's emphatic assertion that the timeliness of the request for a certificate of probable cause is an integral part of the certification process (see *People v. Mendez, supra,* 19 Cal.4th at pp. 1099, 1104), we cannot conclude that good cause exists simply because defendant's trial attorney knew that defendant was relying on him to perfect an appeal on a particular issue. If counsel's knowledge of such reliance was alone adequate, there would exist little incentive to follow the time limits that the *Mendez* decision so emphatically enforced. Counsel could delay seeking a certificate of probable cause with impunity if counsel could safely predict that a later request for relief from default must be granted.

Sturns urges us not to place undue emphasis on *Mendez* because, according to Sturns, the delay in *Mendez* was not the fault of defendant's attorney. The *Mendez* decision does not support Sturns's characterization of it; the decision does not identify the reason for delay.[7]

Sturns guides us away from *Mendez* and urges us instead to rely on *People v. Ribero*, in which relief from default was granted. (See *Ribero, supra,* 4 Cal.3d at p. 65.) However, at the time of the *Ribero* decision, rule 31(a) limited the time for filing a notice of appeal to 10 days after rendition of judgment. (See *Ribero, supra,* 4 Cal.3d at p. 64.) In cases involving a guilty plea, the appeal would not be operative unless the defendant also filed a statement of certificate issues within that same 10-day period (or received trial court permission to file the statement beyond the 10-day period but not later than 40 days after rendition of judgment) and the trial court thereafter executed and filed a certificate of probable cause. (*Ibid.*) Rule 31(a) was also different from current rule 31 in that it permitted appellate courts "to grant

---

[7]The *Mendez* decision reports the following: "Mendez filed a notice of appeal in the superior court immediately after rendition of judgment. He completed a preprinted form designed for use after a plea of guilty or nolo contendere. By check mark, he indicated that his appeal was based on noncertificate grounds, specifically, postplea matters not challenging the validity of his guilty plea, albeit without identifying what they might be. He did *not* indicate that his appeal was based on certificate grounds as well. Hence, he did not fill out a section (which his counsel happened to sign) in which he could have stated such grounds with an eye toward obtaining a certificate of probable cause." (*People v. Mendez, supra,* 19 Cal.4th at p. 1091, italics in original.)

relief from default in filing notices of appeal in proper cases." (*Ribero, supra,* 4 Cal.3d at p. 65.) The Supreme Court explained that "[t]his power is to be liberally construed to protect the right to appeal" and that it " 'ha[d] established the following general rules: A defendant is entitled to relief, absent grounds for waiver or estoppel, where he makes a timely request of his trial attorney to file an appeal, thereby placing the attorney under a duty to file it, instruct defendant how to file it, or secure other counsel for him [citations]. . . .' [Citation.]" (*Ibid.*)

Analyzing the facts of that case, the *Ribero* decision explains that it was undisputed "that within 10 days after imposition of sentence petitioner told his attorney that he wanted to appeal, and that his attorney did not take any action to perfect the appeal." (*People v. Ribero, supra,* 4 Cal.3d at p. 65.) Applying the liberal rules created for granting relief from failure to file a timely notice of appeal, the Supreme Court granted petitioner relief from his default in failing to seek a certificate of probable cause by granting permission to belatedly seek such a certificate. (*Ibid.*)

We disagree with Sturns's assumption that the standard for relief from default used in *Ribero* applies to this case. The standard used in *Ribero* was premised on the standard then applicable to extending the time for filing an appeal. (*People v. Ribero, supra,* 4 Cal.3d at p. 65.) Rule 31 has since been amended, however, to remove appellate authority to extend a defendant's time for filing a notice of appeal. (See *In re Benoit* (1973) 10 Cal.3d 72, 85 [109 Cal.Rptr. 785, 514 P.2d 97].) The basis for application of the liberal standard in *Ribero* therefore no longer exists.[8]

Sturns also points to *Ribero*'s discussion of the obligations of trial counsel: "[a]dvice or assistance of counsel in filing the notice of appeal is meaningless if counsel does not also advise or assist in preparation and filing of the required statement. It follows that counsel's obligation to assist in filing the notice of appeal necessarily encompasses assistance with the statement required by section 1237.5." (*People v. Ribero, supra,* 4 Cal.3d at p. 66.) The Supreme Court has more recently suggested, however, that the obligations of trial counsel do not insulate the defendant from the adverse consequences on appeal of counsel's failure to meet those obligations. (See *People v. Mendez, supra,* 19 Cal.4th at p. 1100, fn. 10.) If a defendant suffers such adverse consequences, he is not, however, without recourse. The

---

[8]We note that the decision in *People v. Breckenridge* assumed that the *Ribero* standard of good cause remained viable. (*People v. Breckenridge, supra,* 5 Cal.App.4th at p. 1102.) However, *Breckenridge* did not need to consider the issue extensively because the defendant offered no justification for the delay and instead solely relied on the general policy favoring resolution of appeals on the merits. (*Ibid.*)

defendant can seek relief by filing a petition for writ of habeas corpus alleging ineffective assistance of counsel.

Lastly, Sturns urges us to apply the *Ribero* standard because the *Mendez* decision cites *Ribero*. However, *Mendez* cited *Ribero* for the proposition that section 1237.5 "is procedural in nature." (*People v. Mendez, supra,* 19 Cal.4th at p. 1095.) Other Supreme Court cases have cited *Ribero* as well. As in the *Mendez* decision, none of these cases cite *Ribero* for the standard that it applied in granting relief from default. (See, e.g., *People v. Hoffard, supra,* 10 Cal.4th at p. 1178 [citing *Ribero* for its due process discussion]; *People v. Jones, supra,* 10 Cal.4th at p. 1112, fn. 5 [citing *Ribero* for its discussion of the amendments to rule 31(d) and for general recognition that relief from default may be available].) ■ Citation of a case for one proposition does not constitute endorsement of other propositions in that decision.

■ While rule 31 no longer permits appellate courts to extend the time for filing a notice of appeal, relief from the time limit for filing a notice of appeal is nevertheless available to incarcerated individuals under the principle of constructive filing. (*In re Benoit, supra,* 10 Cal.3d at p. 84 ["constructive filing . . . embodies nothing more than a basis for judicial acceptance of an excuse for the appellant's delay in order to do justice"].) Sturns contends that the constructive filing doctrine is the equivalent of the standard applicable under former rule 31(a). *In re Benoit* implicitly rejects this assertion by defining a constructive filing standard that varies from the standard used in *Ribero*. (*In re Benoit, supra,* 10 Cal.3d at pp. 80-81.) The *Benoit* decision explains that constructive filing applies only "where the defendant is incarcerated or otherwise in custody after having been properly notified of his appeal rights by the sentencing judge and has made arrangements with his trial attorney to file a notice of appeal for him." (*In re Benoit, supra,* 10 Cal.3d at p. 86.) In addition to those circumstances, *Benoit* also requires that the defendant's attorney undertook the responsibility of filing a notice of appeal but did not do so, that the defendant was lulled into "a false sense of security" and that "*the circumstances are compelling.*" (*Id.* at p. 87, italics added.) Stated differently, relief under the principle of constructive filing will not be granted "when the defendant has displayed no diligence in seeing that his attorney has discharged this responsibility." (*Id.* at p. 89.) The *Benoit* decision details the efforts of its two petitioners, efforts which included reminding counsel to file a notice of appeal and checking with the clerk's office to learn whether the appeal was in fact filed. (*In re Benoit, supra,* 10 Cal.3d at pp. 87, 89.) The Supreme Court characterized this conduct as "diligent" and deemed each petitioner's notice of appeal as constructively filed. (*Ibid.*)

■ The constructive filing doctrine is of no aid in considering relief from default under rule 45. The trial court advises a defendant of his right to

appeal and the applicable time limits. (See rule 470.) In contrast, the trial court is not required to advise a defendant about the requirements of section 1237.5 and hence the defendant cannot necessarily be expected to display diligence in seeing that his attorney discharges this responsibility.[9] (See *In re Benoit, supra,* 10 Cal.3d at p. 89.) If we adopt a standard for good cause that is based on the constructive filing doctrine but which lacks a requirement of diligence on the part of the defendant, appellants could readily avoid the timeliness component of the certificate process. Rule 31(d), first paragraph, could lose much of its appeal-limiting function as a consequence.

Moreover, we question whether courts should continue to apply the same standard for granting relief from failure to file a timely notice of appeal and from failure to file a timely request for a certificate of probable cause. (Cf. *In re Fountain* (1977) 74 Cal.App.3d 715, 718 [141 Cal.Rptr. 654] [summarily applying same standards].) As the Supreme Court explained in *Mendez,* section 1237.5 "establishes a mechanism for the operation of the 'general' *appeal-limiting* 'principle' of the decisional law. [Citation.]" (*People v. Mendez, supra,* 19 Cal.4th at p. 1095, italics added.)

Some might view as harsh our conclusion that good cause is not necessarily established simply because the defendant relied on counsel and counsel was aware of that reliance. Regardless of its harshness, however, the conclusion is dictated by our Supreme Court's emphatic direction that the time limits of rule 31(d) be respected (*People v. Mendez, supra,* 19 Cal.4th at p. 1099) and its conclusion that it was bound by the language of the rules regardless of its view of those rules (*Id.,* at p. 1104).

Some might also view our conclusion as wasteful of court resources but again we find our Supreme Court's discussion in *Mendez* informative. The Supreme Court explained, albeit in a different context, that "[i]n enacting section 1237.5, the Legislature evidently sought to promote judicial economy in the appellate system as a whole, for it established a mechanism that did not invite consideration of the peculiar facts of the individual appeal. The provision lays down a 'condition precedent' to the taking of an appeal within its scope. [Citation.] It is a general 'legislative command' to defendants. [Citation.] It is not an authorization for 'ad hoc dispensations' from such a command by courts. [Citation.] Indeed, it effectively precludes dispensations of this sort, which are 'squarely contrary' to its terms [citations]. In adopting what is now rule 31(d), first paragraph, to implement the

---

[9] In some instances, defendants will receive some information about this requirement. For example, Mendez used a preprinted notice of appeal form that apparently included a section for indicating certificates issues, which section could be completed "with an eye toward obtaining a certificate of probable cause." (*People v. Mendez, supra,* 19 Cal.4th at pp. 1091, 1102, fn. 11.) No such form was used by Sturns.

provision, the Judicial Council also evidently sought to promote judicial economy in the appellate system as a whole, for it refined the mechanism that the Legislature established. [¶] Even if we did not believe that section 1237.5 and rule 31(d), first paragraph, should be applied in a strict manner, we would have to conclude that they should *not* be applied in a relaxed one. History has demonstrated that the search for 'judicial economy' in the expedient disposition of the individual appeal and its peculiar issues has been costly indeed, as fact-specific questions have arisen, time and again, demanding legally indeterminate answers. In view of this demonstration, we are of the opinion that the search for 'judicial economy' on the peculiar facts of the individual appeal has turned out to be futile. We now determine that it must be abandoned." (*People v. Mendez, supra,* 19 Cal.4th at p. 1098, fn. omitted, italics in original.)

While we conclude that reliance on counsel is not necessarily sufficient to establish good cause, we do not hold that good cause can never exist when the defendant relies on counsel to perfect the appeal. Our review is limited to the facts of this case; those facts do not warrant relief. Courts generally consider the length of and reason for delay when considering whether good cause for relief exists in other contexts. (See, e.g., *Brown v. Guy* (1959) 167 Cal.App.2d 211, 215 [334 P.2d 67]; *Caldwell v. Harvey* (1948) 85 Cal.App.2d 104, 108 [192 P.2d 62].) Given the Supreme Court's concern with the timeliness of a defendant's efforts to secure a certificate of probable cause, we conclude that length of and reason for delay are relevant considerations in this context as well. Here, trial counsel continues to adhere to the opinion that a certificate of probable cause was not required. Appellate counsel became aware of the problem in June 1999 but did not seek relief from default until October 1999, a delay of nearly twice the length of time allowed in rule 31(d), first paragraph, for seeking the required certificate and more than eight months after entry of judgment. Thus, in the context of rule 31(d), we find the delay significant and the reasons for delay not compelling. ▮▮▮ We therefore conclude that Sturns has not shown good cause for relief from default.[10]

---

[10]Contrary to the dissent's characterization, our conclusion that Sturns has *not shown good cause* does not amount to a finding of ineffective assistance. (See conc. & dis. opn., *post,* at p. 1399.) "To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the *sense that it* 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citations.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 366 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) In this decision, we have neither made a finding that counsel's performance fell below the standard of a reasonably competent attorney nor considered the issue of prejudice, which would require more than the conclusion that an earlier request for relief from default

### III. DISPOSITION

Sturns's application for relief from default is denied.[11] Sturns's request for an extension of time to file his opening brief is granted in part. Sturns may file an opening brief on noncertificate issues within 30 days from the date of this opinion. Sturns's request for an extension of time is denied in all other respects. This extension of time does not constitute an evaluation of the appropriateness of bringing any or all of the noncertificate issues that Sturns may raise.

Stevens, J., concurred.

**HANING, J.,** Concurring and Dissenting.—This opinion addresses an application for relief from default for failure to obtain a Penal Code section 1237.5 (hereafter section 1237.5) certificate of probable cause. I agree with the majority that a section 1237.5 certificate is required for appellate review of the issue appellant seeks to raise—the trial court's denial of his motion to dismiss a prior conviction allegation.

The majority concedes that good cause may excuse a delay in seeking a section 1237.5 certificate. However, the majority holds that good cause is not present here, even though it necessarily concludes that trial counsel rendered ineffective assistance by failing to obtain a certificate. It is clear that the predominant theme of appellant's defense was an attack on the validity of his prior conviction. Prior to the entry of appellant's plea his attorney unsuccessfully moved to dismiss the prior conviction allegation. Appellant's notice of appeal specifically states his intent to appeal from "the imposition of a prior conviction alleg[ation]." Supporting this application for relief is trial counsel's declaration that he intended to preserve that issue for appellate review and believed he was not required under these circumstances to obtain a section 1237.5 certificate to do so. This is confirmed by the following discussion during the sentencing hearing:

"[APPELLANT'S COUNSEL]: . . . This is a case where we were inclined to have a hearing on the question of the strike. I don't know if [appellant]

---

would have resulted in our granting an extension of time to seek a certificate of probable cause. Whether the conduct and decisions of the attorneys in this case constitute ineffective assistance is an inquiry best resolved via a petition for writ of habeas corpus filed initially in the superior court.

[11]Currently pending before the United States Supreme Court is the issue of whether trial counsel violates the defendant's Sixth Amendment right when, without receiving defendant's consent, counsel does not file a notice of appeal following disposition by plea agreement. (See *Ortega v. Roe* (9th Cir. 1998) 160 F.3d 534, 536, cert. granted May 3, 1999, 526 U.S. 1097 [119 S.Ct. 1574, 143 L.Ed.2d 669].) In the Ninth Circuit, a "petitioner 'need only show that he did not consent to the failure to file.' " (160 F.3d at p. 536) In other words, defendant need not show prejudice. (*Ibid.*) The Supreme Court's resolution of this issue could affect the reasoning and result of this decision.

admitted it or submitted because there was some litigation involved in the strike *which will ultimately be subject to appeal.*

"THE COURT: He admitted it . . . .

"[APPELLANT'S COUNSEL]: I think *subject to the validity of the motion to strike,* if I'm not mistaken. . . ." (Italics added.)

By holding that a certificate is in fact required, the majority is holding that trial counsel's understanding of appellate procedure was erroneous, i.e., that trial counsel rendered ineffective assistance.[1] In addition, the majority also faults appointed appellate counsel for delay, and seems to imply that were it not for the delay, the requested relief might be granted. If this is the majority's position, appellate counsel has also rendered ineffective assistance.

It is undisputed that "a trial court, when sentencing a criminal defendant, may not rely on a prior felony conviction obtained in violation of the defendant's constitutional rights." (*People v. Allen* (1999) 21 Cal.4th 424, 429 [87 Cal.Rptr.2d 682, 981 P.2d 525].) If we follow the majority's analysis to its logical conclusion, the end result is that an indigent criminal defendant has lost his opportunity to appeal a sentence he contends is unlawful, because both his appointed trial and appellate counsel failed to perform "in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Under the majority's view, if appellant's sentence is in fact unlawfully excessive, the fact that his attorneys may have negligently failed to take the necessary action to correct it does not constitute good cause for relief.

An indigent criminal defendant is constitutionally entitled to the effective assistance of counsel (*Strickland v. Washington* (1984) 466 U.S. 668, 685-686 [104 S.Ct. 2052, 2063, 80 L.Ed.2d 674]; *In re Harris* (1993) 5 Cal.4th

---

[1]In a footnote the majority makes the strange assertion that "we have neither made a finding that counsel's performance fell below the standard of a reasonably competent attorney nor considered the issue of prejudice . . . ." (Maj. opn., *ante,* at p. 1398, fn. 10.) Yet the majority holds, and I agree, that a certificate of probable cause was necessary to appeal the only issue actually in contention in this case, and that trial counsel failed to obtain the necessary certificate, erroneously believing that one was not required. (See maj. opn., *ante,* at pp. 1389-1391.) I submit that the failure to properly preserve for appeal an issue for which counsel is seeking appellate review establishes that "counsel's performance was deficient when measured against the standard of a reasonably competent attorney . . . ." (*People v. Kipp* (1998) 18 Cal.4th 349, 366 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) As to prejudice, *it is* undisputed that the failure to obtain the certificate has resulted in the loss of appellate review. If appellate counsel was not delinquent in his request for relief from default, or if his timing is of no significance, I fail to understand why the majority discusses it.

813, 832 [21 Cal.Rptr.2d 373, 855 P.2d 391]; *People v. Pope, supra,* 23 Cal.3d at pp. 421-426), both at trial and on appeal (*In re Smith* (1970) 3 Cal.3d 192, 202-203 [90 Cal.Rptr. 1, 474 P.2d 969]). I do not construe our Supreme Court's opinion in *People v. Mendez* (1999) 19 Cal.4th 1084 [81 Cal.Rptr.2d 301, 969 P.2d 146] or *People v. Allen, supra,* 21 Cal.4th 424 as imposing an absolute bar to granting relief for good cause based on ineffective assistance of counsel. We are not being asked to reverse appellant's sentence, but merely to give him the opportunity to ask the trial court to issue a certificate. I would find the ineffective assistance of counsel to constitute good cause, grant the relief and permit appellant to apply to the trial court for a certificate, rather than wait for the inevitable habeas corpus petition that is sure to follow if this application is denied.

Appellant's petition for review by the Supreme Court was denied April 19, 2000.