[Crim. No. 23020. Second Dist., Div. Two. Aug. 3, 1973.]

In re RONALD M. RIDENOUR on Habeas Corpus.

**COUNSEL**

Finkel & Herring and Neil M. Herring for Petitioner.

Burt Pines, City Attorney, and Gerry L. Ensley, Deputy City Attorney, for Respondent.

**OPINION**

**ROTH, P. J.**—Petitioner Ridenour, by way of habeas corpus filed with the Supreme Court and transferred to this court, seeks to recall a remittitur

issued by the appellate department of the superior court, dismissing his appeal from a judgment of conviction in the municipal court, asserting in his petition violation of state policy to hear appeals (*In re Parker* (1968) 68 Cal.2d 756, 760 [69 Cal.Rptr. 65, 441 P.2d 905]), deprivation of appeal in violation of Penal Code, section 1466, subdivision 1 (a), and deprivation of effective counsel on appeal, in violation of the Sixth Amendment of the United States Constitution.

Petitioner, represented at the trial and at the time of sentence by Daniel M. Lund and Joan Andersson, was found guilty by a jury for violation of Penal Code, section 148, Penal Code, section 415, and Municipal Code, section 41.18(a), and on January 21, 1971, severally sentenced on said offenses with execution thereof suspended for three years on condition that petitioner serve the first 180 days in county jail, with concurrent terms in the county jail of six months, three months and six months, respectively.

On January 21, 1971, petitioner, through Lund and Andersson, filed a written notice of appeal. A proposed statement of facts on appeal due for filing on or before January 26, 1971, was extended to February 25, 1971. On February 25, 1971, petitioner filed a proposed statement reciting that his argument would be based chiefly on the evidence set forth in · the reporter's transcript, and that as provided by rule 184(a) of the California Rules of Court,[1] it would be filed and made a part of the record.

On March 12, 1971, petitioner requested that attorney Luke McKissack be substituted as attorney on appeal, and a purported substitution of attorneys signed by petitioner and McKissack, but unsigned by Andersson and/or Lund, was filed on that date. On the same day, March 12, 1971, McKissack filed a notice of motion for an order directing the preparation of a reporter's transcript at county expense.

In letters to Lund, Andersson and McKissack on April 1, 1971, the trial judge advised all three attorneys that a substitution of attorneys cannot be granted until there is an appearance in court by the prior attorneys consenting to such substitution, and that the motion for preparation of a transcript at county expense could not be granted without proof of an attempt to reach a settled statement and proof of the indigence of petitioner. No affidavit of indigence was ever filed.

At hearing on May 4, 1971, to determine these matters, Lund and Andersson were ordered to serve an amended proposed statement on William Reidder, prosecution counsel at trial, and to meet with Reidder

---

[1]All rules referred to are California Rules of Court unless otherwise noted.

prior to May 18, 1971, to discuss points of disagreement in the statement, and also directed the three attorneys to confer with him on May 25, 1971, to attempt to draw up an engrossed settled statement. No amended substitution of attorneys was ever filed and neither Lund nor Andersson appeared as ordered at the conference on May 25, 1971. On the same day, four months after petitioner had indicated he decided to include a reporter's transcript, the trial judge ordered the cause transferred to the appellate department of the superior court as a docket appeal and on September 29, 1971, the appeal was docketed in accord with rule 183(b), including the statement on appeal already on file but without the reporter's transcript since it had not been filed. On October 26, 1971, petitioner, pursuant to rule 186(b), moved for relief from the provisions of rule 187,[2] or in the alternative for an order directing a hearing to settle a statement of facts. Pursuant to said motion the court, on January 3, 1972, made an order relieving petitioner from his default in failing to serve and file a proposed statement on appeal within the time required. On January 10, 1972, 11 months after his first indicated desire to include the reporter's transcript, petitioner filed an amended statement on appeal and a notice of intention to file a reporter's transcript. On January 25, 1972, the court granted an extension of time to February 24, 1972, to file the reporter's transcript. A further and final extension of time was granted to March 24, 1972.

On June 7, 1972, no reporter's transcript having been filed, petitioner was ordered by the court to show cause why his appeal should not be dismissed under rule 190 because of lack of due diligence in proceeding with the appeal.

On June 29, 1972, 18 months after his original notice of appeal, petitioner's appeal was dismissed. A petition for rehearing was denied on July 14, 1972, and the remittitur was ordered to issue forthwith.

On July 31, 1972, petitioner, in pro. per., moved pursuant to rules 191(d) and 186(b) for recall of the remittitur and relief from default. He alleged his failure to submit a reporter's transcript was due to misinformation given him by his attorney Lund, who did not inform him that full payment of the deposit was required before the reporter's transcript could be prepared.

---

[2]Rule 187 provides in relevant part: "At the time of settlement [of a statement of fact on appeal] the judge may direct the appellant to engross the statement or transcript, or both, as settled. Thereupon the appellant shall engross the statement or transcript, or both, as corrected and settled and present the same to the judge for certification within five days from the date of settlement, and if he fails to do so within said period or any lawful extension thereof his right to have such statement or transcript settled or certified shall thereupon terminate."

On August 21, 1972, petitioner's petition filed in propria persona for writ of habeas corpus was denied but pending determination of his motion to recall the remittitur previously made as noted above the appellate department on August 22, 1972, did issue a writ of supersedeas, which had also been filed in propria persona pending determination of the motion to recall remittitur. On August 24, 1972, the appellate department appointed Judge Charles H. Church of the superior court as Special Master to take evidence on the petitioner's charge in the motion to recall that the defaults of petitioner's counsel were so serious[3] as to deprive him of effective aid of counsel on appeal within the requirements of *In re Smith,* 3 Cal.3d 192 [90 Cal. Rptr. 1, 474 P.2d 969], and *People* v. *Rhoden,* 6 Cal.3d 519 [99 Cal. Rptr. 751, 492 P.2d 1143].

Judge Church, as Special Master, after five days of hearings, made his written report to the appellate department and thereafter, on February 2, 1973, the appellate department, reciting the findings of the Special Master, made an order denying the motion to recall the remittitur, which order recited in pertinent part: "By this unusual motion to recall the remittitur, it is now urged that appellant was denied the effective assistance of counsel. Although the Special Master found that appellant 'did not have adequate and effective counsel on his appeal,' he also found appellant was 'not an uninformed, unintelligent person' and that he did not have 'unlimited faith and confidence in the competency of' his attorneys of record 'and took no steps during the long period of delay to protect his own interests.' The report further notes . . . 'The appellant has been free on bail at all times and apparently did very little if anything to inquire about or to contact his attorneys with respect to the progress of his appeal from the date of his trial [January 21, 1971] until February, 1972. His first payment, in part, for the preparation of a transcript was made on March 16, 1972. An inference can be drawn from the record that so long as he was not in imminent

---

[3]The order of reference also stated in pertinent part: ". . . In determining said major question said master should consider and determine among other things what was the arrangement, if any, between counsel and reporter Robert Gunn as to preparation of the transcript on appeal; what was appellant advised in this regard; did appellant's personal defaults in any way contribute to the failure to prepare the record; what were the arrangements for substituting Luke McKissack as counsel for appellant in place and stead of attorneys Lund and Andersson; did appellant's personal action or inaction contribute to the failure to complete substitution; what communications and advice transpired between counsel of record and appellant during the over eighteen months which have elapsed since the filing of notice of appeal; to what extent, if at all, has appellant contributed to this delay. By designating the foregoing elements for consideration we in no way limit the field which the Special Master may cover in answering the basic question submitted to him."

danger of having to serve his sentence, the appellant was not concerned about bringing the matter to an early conclusion.' "

Petitioner's motion for a rehearing in the appellate department of the order of February 2, denying the motion to recall the remittitur, was denied on February 23, 1973.

Habeas corpus proceedings, seeking the same relief petitioner now seeks, were initiated in the appellate department by petitioner and denied on August 24, 1972. Thereafter, on February 23, 1973, we denied a petition substantially similar in all respects to the one now before us. Thereafter, on March 7, 1973, a petition for the writ was, as indicated at the outset, made to the Supreme Court which issued an order to show cause and transferred the case for hearing to this court.

Two days prior to July 12, 1973, the day set for oral argument of the order to show cause before this court, petitioner, now represented by Finkel and Herring, per Herring, moved in writing[4] and reiterated the motion orally on the day of argument, to wit, that petitioner be permitted to augment the record on appeal with a reporter's transcript of the hearings had before the Special Master. Both motions were denied. No prior attempt had been made to obtain such augmentation. No affidavit or declaration has been filed nor has any statement been made by petitioner or anyone else on behalf of petitioner which remotely suggests that any arrangements have been made or conversations had with the reporter for the preparation of such transcript. No affidavit of indigency has been filed in this court or the superior court. In fact, there is nothing in the record before us, nor is there anything in the superior court file which we have before us on our order of augmentation, which includes a transcript of the testimony taken before the Special Master or which shows that the reporter's transcript of the trial held in December of 1970, which petitioner noted as early as February 25, 1971, was vital as an addition to his statement on appeal, has ever been filed in the superior court.

It is settled that although entitled to "great weight," the appellate department was not nor is this court bound by the findings of the Special Master (*People* v. *Acosta,* 71 Cal.2d 683, 687 [78 Cal.Rptr. 864, 456 P.2d 136]), and we are sensitive to the fact that a considered independent determination of whether such findings are supportable in all respects requires a

---

[4]The motion is entitled: "Motion for Preparation of Transcript of the Entire Evidentiary Hearing Held Before Special Master Charles Church Upon Petitioner's Motion to Recall the Remittitur in the Appellate Department of the Superior Court, and Motion for a Continuance of Hearing on Order to Show Cause Until Transcript is Prepared."

reading of the reporter's transcript of proceedings before the Special Master; but we have been cited to no case and know of none which requires this court to order such a transcript and make it a part of the record before us.

To the contrary, the petition before us comprising 62 pages (Exhibits A to H thereof comprising 37 pages) omits to include as one of the exhibits the transcript of the testimony before the Special Master, the absence of which current counsel insist make it impossible to properly present petitioner's case. Since the petition before us is full and complete and shows a thoroughly competent lawyer-like presentation in all other respects, we conclude that its omission is not inadvertent. Knowledgeable counsel know the proceedings before the Special Master will not be ordered by this court, assuming it is necessary and proper, in absence of an affidavit of indigency.[5]

Petitioner's counsel, in his motion filed on July 10, 1973, to augment, states in pertinent part: "that it will be impossible for Petitioner and his counsel to prepare to adequately represent Petitioner at an Order to Show Cause Hearing before the above-entitled Court, inasmuch as the Appellate Department's refusal to recall the Remittitur was based upon the findings of Special Master Charles Church, which findings were in turn based upon evidence received by him at a transcribed hearing." There is, however, no affidavit or declaration by petitioner or counsel which even reiterates the argumentative conclusions made a part of the body of the motion.

■ All presumptions are in favor of the judgment (6 Witkin, Cal. Procedure (2d ed. 1971) § 235, p. 4225). Well-settled rules of appeal require all logical inferences which may be drawn from findings and conclusions sustained by substantial evidence should be made to support them. (*People* v. *Bynum,* 4 Cal.3d 589, 599 [94 Cal.Rptr. 241, 483 P.2d 1193]; *People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) The lack of evidence to support a finding and conclusion must be set forth with some specificity to a reviewing court. As a minimum, the reviewing court should be furnished with a transcript of the evidence upon which petitioner relies. (*In re Smith,* 2 Cal.3d 508, 511 [86 Cal.Rptr. 4, 467 P.2d 836].) ■ Wholly aside from petitioner's failure to supply a reporter's transcript of the proceedings before the Special Master noted above, petitioner does not include in the petition before us the reporter's transcript of

---

[5]At the oral argument Mr. Herring said: ". . . I now move the court for a postponement of the decision on the merits until the petitioner can furnish the court a transcript, which will probably have to be at his own expense, of the evidentiary hearing before the Master."

the original trial which he indicated as early as February 25, 1971, he needed to perfect his appeal.

It seems apparent to us that counsel in the trial court and on the appeal to the appellate department have served petitioner with more than usual good fortune in successfully delaying for a period of years finality of a municipal court judgment, and it is not an illogical conclusion that attainment of that end was a calculated course of conduct. Counsel on appeal have apparently adopted the same strategy. Our conclusion in this respect is fortified by the admission on oral argument of petitioner's fourth counsel, Mr. Herring, at which time we were advised that a fifth counsel, Mr. Hugh R. Manes, is in the wings ready to take up the torch when Mr. Herring tires. In short, we are put on notice that the pattern of prior substitutions which created in large part the delays in perfecting a record and which spawned the alleged deficiencies in representation of which petitioner complains is to remain the same and will be carried out ad infinitum.

Petitioner's heavy reliance upon *In re Parker, supra,* 68 Cal.2d 756, is misplaced. The facts are not comparable. The court in *Parker* holds that habeas corpus is a proper remedy "to correct the erroneous denial of a right to an effective appeal" and afforded relief in a situation where misreading of a rule on appeal because of defective eyesight caused a five-day delay.

The actions of various counsel, as detailed in the report of the Special Master, do not require reversal of the dismissal of the appeal under the holdings of *In re Smith, supra,* 3 Cal.3d 192, and *People* v. *Rhoden, supra,* 6 Cal.3d 519. These cases establish that "the inexcusable failure of petitioner's appellate counsel to raise crucial assignments of error, which arguably might have resulted in a reversal, deprived petitioner of the effective assistance of appellate counsel to which he was entitled under the Constitution." (*In re Smith, supra,* at pp. 202-203.) No such failures are involved in the case at bench. On the contrary, the record impels the conclusion that counsel and their client were embarked upon a course of conduct calculated to delay the compliance with that portion of the ordered probation which required service of time in the county jail.

The detailed and conscientious report of the Special Master corroborated by a detailed uncontradicted eloquent record amply supports all of his findings and conclusions which were adopted by the appellate department of the superior court as part of its opinion. On the incontestable record of the proceedings, the findings and conclusions in the report of the Special Master are solidly grounded. To paraphrase *Acosta,* page 687:

"They are supported by [an independent] . . ." record and convincing inferences. The appellate department was well advised to adopt the Special Master's report.

Finally, an independent review of the record supplied to us by petitioner, augmented by the superior court file, refutes any claim of incompetence or neglect of petitioner's counsel in respect of an appeal to the appellate department.

In Exhibit B to the petition at bench, petitioner in a declaration made before the appellate department on August 10, 1972, dated 7/28/72, admits he retained and paid McKissack for the appeal and there was trouble about the substitution and "problems . . . over the settled statement . . . all of which occurred as early as April 1971. He admits he was informed about need for money for a reporter's transcript on February 20, 1972, almost one year later, which statement is difficult to accept, especially when said lack of knowledge is exacerbated with the statement that he did not know his appeal was dismissed until so advised by a friend July 25, 1972, and that he then took over the file on July 26, 1972. Petitioner also declares that he learned for the first time of the numerous continuances on or about that date. He admits that on July 26, 1972, he spoke with the court reporter. The court reporter in his declaration of July 28, 1972, states in pertinent part that on July 28, 1972, he had a telephone conversation with petitioner and ". . . I am awaiting decision . . . that his appeal will be heard before I begin the final two weeks of work on the transcript." It is apparent not only that there is yet no completed transcript, but even if the impression petitioner seeks to give that no demand was made on him for the cost of a transcript until more than a year after his three attorneys knew of its need, that if petitioner had in good faith attempted to procure it after he admits he was told on February 20, 1972, about the cost, that it would have been ready in time for the hearing of the appeal and certainly in time for the hearing on the motion to recall the remittitur. It should be noted, too, that the Special Master said in pertinent part: "The reporter received no money for the transcript, although he began preparation of it, and on March 10, 1972 he contacted Mr. Lund and told him he would need the full amount . . . by March 14, 1972, or he would be unable to complete it by March 24, 1972 deadline."

No formal substitution of McKissack was ever made, although he had been retained and paid as early as February 1971. McKissack, too, made it clear at least as early as April 1971 that ". . . he could not adequately represent [petitioner] on appeal until a transcript was prepared" [report of Special Master] and that although there is a pretended showing in the

declaration of petitioner at the time of the abortive substitution (April 1971) that petitioner decided that Lund alone and not Andersson was to represent him on appeal until a formal substitution of McKissack was made, although both were members of the same firm, Andersson did nevertheless continue to act on the appeal. One wonders, too, why McKissack, who according to petitioner's record was the attorney retained and paid to handle the appeal, did not perfect arrangements for a formal substitution and the reporter's transcript.

The conduct of all three counsel and of petitioner, as the Special Master's report indicates, show an acute desire and calculated plan to delay a final disposition of the judgment of conviction against petitioner and a studied plan to create error in the process. (Cf. *People* v. *Lindsey,* 27 Cal.App.3d 622, 632 [103 Cal.Rptr. 755].)

In respect of the matter before us it is fair to infer from the record that petitioner has been advised since July 31, 1972, when he first filed an in propria persona motion to recall the remittitur in the appellate department, followed by an in propria persona presentation of a petition for a writ of habeas corpus and a petition for a writ of supersedeas, that he expected to rely upon and use a reporter's transcript of the proceedings before the Special Master in the hearing at bench. We cannot but conclude that petitioner is making sport of the law, the rules of appeal, and prostituting them for the sheer purpose of delay.

The order to show cause heretofore issued is discharged and the petition for a writ of habeas corpus is denied.

Fleming, J., and Compton, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 26, 1973.