Filed 8/28/25  P. v. Brim CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>COREY BRIM,<br><br>        Defendant and Appellant. | A172535<br><br>(Humboldt County<br>Super. Ct. No. CR2202655A) |

After defendant Corey Brim pleaded guilty to second degree robbery (Pen. Code, §§ 211, 212.5)[1] and admitted a firearm enhancement (§ 12022.53, subd. (b)), he was sentenced to 13 years in state prison.  Defendant appealed, and his appointed appellate counsel filed a brief raising no issues but seeking our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Counsel advised defendant of his right to file a supplemental brief, and defendant has filed such a brief.  Having reviewed the record as required by *Wende* and defendant's supplemental brief, we affirm the judgment.  However, we order the trial court to correct a clerical error in the abstract of judgment.

---

[1]        Further undesignated statutory references are to the Penal Code.

# BACKGROUND

**The Facts**[2]

On September 12, 2022, defendant contacted and asked his old friend, David Gonzales, if he could stay at Gonzales's residence. Gonzales lived in a house on property that had a legal cannabis growing operation (hereafter, property). Gonzales let defendant stay at his place, during which time defendant disclosed that he owed his attorney $7,000 and that if he did not pay, he would be incarcerated for some period of time.

Two days later, Gonzales and defendant had a disagreement. Defendant accused Gonzales of calling him "boy" and being a racist. After the disagreement, defendant took Gonzales's keys and wallet, and told Gonzales to stay at the main house on the property. Gonzales did not feel safe, so he left the residence and went to stay at a neighbor's place for the evening.

The next morning, on September 15, Gonzales returned to the property. When he arrived in his car, he heard defendant saying to other individuals, "I want to talk to that racist," before approaching Gonzales's car. Defendant told Gonzales that Gonzales was going to pay for defendant's attorney fees and give him $7,000. The "conversation turned physical." Defendant pulled out a firearm from a holster in his waistband. Defendant struck Gonzales with his hand about four to five times, causing Gonzales to fall to the ground. Defendant then placed the firearm to Gonzales's head, after which Gonzales gave defendant $7,000. Defendant went on to demand Gonzales give him another $2,300, on top of the $7,000. Gonzales complied. Afterwards, defendant said he wanted to leave the property and had other individuals drive him to get a rental car.

---

[2] We draw our facts from the preliminary hearing transcript, which the parties stipulated provided a factual basis for defendant's plea.

On September 16, two individuals trespassed on the property and took a safe. Law enforcement responded to a call reporting the incident and identifying the individuals' vehicle as a black Dodge Charger. Law enforcement located the vehicle and eventually apprehended the driver and passenger, later identified as defendant and co-defendant Dayten Hamilton. Law enforcement found over $8,300 in cash in defendant's pants, and a safe in the vehicle.

**The Proceedings Below**

On November 3, 2023, the district attorney filed an information charging defendant with second degree robbery (§§ 211, 212.5; count 1); assault with a firearm (§ 245, subd. (a)(2), count 2); burglary (§ 459; count 3);[3] and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 4). As to count 1, the information alleged defendant personally used a firearm in the commission of one of the specified felonies (robbery) (§ 12022.53, subd. (b)). The information further alleged defendant suffered two prior strike convictions under the Three Strikes law (§§ 667, subds. (c) & (e)(1) & 1170.12, subd. (c)(1)) and two prior serious felony convictions (§ 667, subd. (a)(1)).

On February 9, 2024, defendant filed a motion to dismiss count two, which the trial court denied.

On October 7, pursuant to a negotiated plea, defendant signed and initialed a plea form indicating he agreed to enter a plea of guilty to second degree robbery as charged in count 1, as well as admit the firearm enhancement under section 12022.53, subdivision (b). In return, the remaining counts and special allegations would be dismissed. Defendant initialed, among other things, the maximum term and penalties for the

---

[3]    Hamilton was also charged with burglary in count 3.

charge and enhancement to which he was pleading guilty, the consequences of his plea, and the constitutional rights he was waiving.

At the plea hearing on October 7, the prosecutor and defense counsel recited the terms of the plea agreement. Both counsel also explained that the agreement included the dismissal of Hamilton as a co-defendant in this case.

The court asked defendant if he understood the plea agreement and defendant answered, "Yes." The court noted it sensed some "hesitation" from defendant, before stating to him: "I want you to have an adequate opportunity to talk to your attorney about it. But I'm not suggesting it's anything other than a difficult decision and I need you to make that willingly and voluntarily and with full knowledge of the charges, your defense, the consequences of your plea, so on and so forth. [¶] . . . [¶] . . . I just want to make sure. If you need additional time then that's fine." A discussion off the record was held.

When back on the record, the court again asked defendant, "Have you had an adequate opportunity to discuss this with your attorney?" Defendant replied, "Yes, your Honor." The court then went over with defendant his constitutional rights and the consequences of his plea:

"THE COURT: . . . So the plea form that I have here in front of me indicates that you understand the rights that you are giving up when you enter a guilty or no contest plea. Did you understand those rights?

"THE DEFENDANT: What rights am I giving up, your Honor?

"THE COURT: All those rights that you indicated here in the plea form. So for instance, you are giving up the right to a jury trial. Jury trial is a trial before 12 people selected from the community. You have the right to assist in their selection with your attorney. That you could not be convicted unless all 12 of those people were convinced beyond a reasonable doubt

4

unanimously of your guilt. So that's your right to a jury trial. That one of the–obviously, the most significant right that you are giving up when you enter this plea.

"So you've indicated here on the form that you understood that. I just want to make sure that you read this or had it explained by your attorney that you know about your rights and that you freely and voluntarily waived those rights and intelligently waived those rights. So the rights that you have indicated here on the plea form, did you understand those rights?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: And do you give up or waive those rights?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: And also in your plea form it explains the consequences of your plea. So in other words, those would be things such as the maximum potential penalty, incarceration, fines, penalty assessments, restitution. There are other collateral consequences like immigration consequences, firearms consequences. All those are detailed in this plea form that you went over with your attorney. So I want to make sure that you understand the consequences of your plea. [¶] Did you understand those consequences when you executed this plea form?

"THE DEFENDANT: Yes, your Honor."

Counsel for both parties stipulated that the preliminary hearing transcript provided a factual basis for the plea. Defendant then entered a plea of guilty to second degree robbery and admitted the firearm enhancement allegation was true. This exchange followed:

"THE COURT: . . . And has anyone promised you anything other than what's been stated here in open court in order to get you to enter into that plea?

"THE DEFENDANT: No, your Honor.

"THE COURT: Anyone threaten you or anyone close to you in order to get you to enter into that plea?

"THE DEFENDANT: No, your Honor.

"THE COURT: So you are entering in your plea freely and voluntarily?

"THE DEFENDANT: Yes, your Honor."

The court found "defendant understands the nature of the allegations in the Information, the possible penalties and consequences of his plea, that he's freely and voluntarily waived his constitutional rights, [and] there is a factual basis for the plea." The court dismissed the remaining charges and special allegations against defendant.

On December 10, defendant filed a sentencing brief asking the court to strike or dismiss, "in the interest of justice under . . . Section 1385, as amended by SB 620," the firearm enhancement under section 12022.53, subdivision (b), which carries a 10-year prison term. Alternatively, defendant asked the court to "reduce" that enhancement by imposing a firearm enhancement under section 12022.5, subdivision (a), which carries a term of 3, 4, or 10 years.

At sentencing on December 13, the court declined to strike or reduce the section 12022.53, subdivision (b) enhancement. The court sentenced defendant to the mid-term of three years for the robbery and an additional, consecutive 10 years for the firearm enhancement. It ordered defendant to pay a $300 restitution fine (§ 1202.4); a matching parole revocation restitution fine (§ 1202.45); a $40 court assessment fee (§ 1465.8, subd. (a)(1)); a $30 criminal conviction fee (Gov. Code, § 70373); and a $585 fine pursuant to section 672 (which provides a court may a impose a fine of up to $10,000 in felony cases upon a conviction of any crime to which no fine is

6

statutorily prescribed).

The abstract of judgment indicates the above sentence and fees and fines, except that it notes the $585 fine was imposed under section 1202.5 (which prescribes a $10 fine for specified crimes that supports "local crime prevention programs," subject to an ability-to-pay determination).

Defendant filed, in propria persona, a timely notice of appeal. He requested, and the trial court granted, a certificate of probable cause

We appointed appellate counsel for defendant.

## DISCUSSION

As noted, appointed appellate counsel has filed a brief raising no issues and asking us to review the record pursuant to *Wende, supra,* 25 Cal.3d 436. Defendant was advised he could file a supplemental brief on his own behalf. Defendant personally filed a 75-page supplemental letter brief, inclusive of an attached declaration and exhibits, asserting various arguments that all challenge his plea.

### Defendant's Supplemental Brief

Although presented under numerous subheadings, defendant's arguments essentially fall into three main categories: (1) there was no factual basis for the plea; (2) he did not voluntarily, intelligently, and knowingly enter his plea; and (3) he received ineffective assistance of counsel. We address these claims in turn, and conclude they do not raise any arguable appellate issues warranting further briefing.

### *Factual Basis for the Plea*

Defendant claims there was insufficient evidence that he committed a robbery. He also asserts in various places throughout his brief that there was no factual basis for the firearm enhancement under section 12022.53, subdivision (b). Additionally, defendant contends that "The Firearm

7

Enhancement Was Improperly Applied Based on Hearsay and Coercive Questioning."  These arguments are foreclosed by defendant's guilty plea to the robbery and admission of the firearm enhancement.

"A guilty plea admits every element of the charged offense and constitutes a conviction [citations], and consequently issues that concern the determination of guilt or innocence are not cognizable.  [Citations.]  Instead, appellate review is limited to issues that concern the 'jurisdiction of the court or the legality of the proceedings, including the constitutional validity of the plea.' "  (*In re Chavez* (2003) 30 Cal.4th 643, 649.)  As such, a guilty plea "waives any right to raise questions regarding the evidence, including its sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations."  (*People v. Turner* (1985) 171 Cal.App.3d 116, 125, fn. omitted.)  These "same restrictions on appellate issues apply after . . . the admission of an enhancement."  (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1364.)  Accordingly, defendant's challenges to the factual basis for his plea and admission are not cognizable on appeal.[4]

### *Validity of the Plea*

Defendant also asserts that his plea was not made voluntarily, intelligently, or knowingly for various reasons.

As an initial matter, in a declaration attached to his supplemental

---

[4]     For this reason, to the extent defendant asserts appellate counsel rendered ineffective assistance by failing to brief the issue concerning the lack of "physical evidence" supporting the firearm enhancement, such assertion fails.  Appellate counsel was not ineffective for declining to raise a non-cognizable issue on appeal.  (See *In re Smith* (1970) 3 Cal.3d 192, 202 [the failure of appellate counsel "to raise crucial assignments of error, which arguably might have resulted in a reversal" deprives an appellant of effective assistance of appellate counsel].)

brief, defendant asks us to "consider this declaration as evidence that my plea was not knowing, voluntary, or intelligent." We decline to do so, as "our review on a direct appeal is limited to the appellate record." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1183.) To the extent defendant's challenges to his plea rest on evidence outside the appellate record, it must be raised, if at all, in a petition for habeas corpus. (See *In re Paul W.* (2007) 151 Cal.App.4th 37, 68 ["A petition for habeas corpus is proper where the claims will require consideration of matters outside the appellate record"], fn. omitted; accord, *People v. Jenkins* (2000) 22 Cal.4th 900, 952–953.) Defendant has not filed a habeas petition, and we decline appellate counsel's request to treat this appeal as such a petition.[5]

We thus limit our review to defendant's challenges that are based upon the appellate record.

Defendant relies on certain comments by his trial counsel at sentencing, including these: "We understand that he faces a 25-to-life sentence if he's sentenced. And let's be very honest, your Honor. I don't know that he can really get the fairest of trials up here. I don't know that

---

[5] Although both trial courts and appellate courts have jurisdiction over habeas corpus petitions, reviewing courts have discretion to deny without prejudice a habeas corpus petition not filed first in the trial court. (*People v. Seijas* (2005) 36 Cal.4th 291, 307.) "Petitioners should first file a petition for a writ of habeas corpus challenging a judgment in the superior court that rendered the judgment. If the superior court denies the petition, the petitioner may then file a new petition in the Court of Appeal. The superior court that rendered the judgment is best equipped to consider the claim in the first instance, to hold an evidentiary hearing when necessary, and to grant relief if appropriate." (*Robinson v. Lewis* (2020) 9 Cal.5th 883, 895, fn. omitted.) Aside from citing cases that have elected to treat improper appeals as habeas petitions in the interest of "judicial economy," appellate counsel offers no explanation as to why it would be appropriate to deviate from this norm here.

that could happen for him here. He's a six-foot-five black man. He looks very menacing. I haven't seen too many black people on the streets here. I'm just being honest. I don't know what trial is like for him here. It's a scary, scary proposition. So, he had to cut his loss. It was a smart move to cut his loss and he had to take responsibility for what he did. He had to be honest and take responsibility for his conduct, which he did; and he, also, took responsibility for the codefendant's conduct and the codefendant was completely dismissed out of this. Completely dismissed. And the Court acknowledged that when he took this plea that he was taking that plea for that purpose. He has taken responsibility here, your Honor."

According to defendant, "This confirms that [his] plea was driven by fear of racial bias, fear of trial, and coercive pressure from the possibility of a life sentence, rather than a genuine admission of guilt." This argument lacks merit. There is no indication in the record that defense counsel's comments implying that defendant would not have received a fair trial due to community racism against black people—a proposition the trial court rejected —were communicated to, much less relied upon by, defendant before entering into the plea agreement.

Defendant's claim that he was "coerced" into pleading guilty is also unsupported by the record. The record does not suggest any duress or undue pressure from defense counsel. Indeed, defendant replied, "Yes," when asked if he was "entering in [his] plea freely and voluntarily." That defendant may have felt pressured into pleading guilty out of fear of the possibility of a life sentence does not render his plea involuntary. As defendant acknowledges, if he did not accept the plea, went to trial, and was convicted on all counts, with the special allegations found true, he potentially faced a life sentence under the Three Strikes law. (See § 667, subds. (c), (e)(2)(A).) The record therefore

10

reflects that rather than oppressive conduct from counsel, any pressure that defendant felt in connection with the plea was the result of him being caught between the proverbial "rock and a hard place" in light of the charges against him and his possible sentence if convicted following a trial.  Upon this record, defendant cannot show he "was under any more or less pressure than every other defendant faced with serious felony charges and the offer of a plea bargain."  (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)

Defendant further contends that he did not intelligently admit the firearm enhancement under section 12022.53, subdivision (b) because the trial court failed to clearly advise him on the nature and consequences of the enhancement, namely the mandatory 10-year sentence it carried.  This claim is also unpersuasive.  Courts "may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment."  (*People v. Panizzon* (1996) 13 Cal.4th 68, 83.)  And here, defendant does not dispute that he validly executed the plea form and that the trial court relied on such form before accepting defendant's plea.  But beyond that, at the plea hearing the trial court took great care to ensure that defendant had an adequate opportunity to discuss his plea with his attorney; indeed, the court gave defendant and counsel an opportunity to discuss it off the record.  When back on the record, defendant confirmed that he had an adequate opportunity to discuss his plea with his attorney.  The court also verbally went through defendant's plea form with him, and along the way asked him whether he understood the rights he was waiving and the consequences of his plea. Defendant acknowledged he did.

### Ineffective Assistance of Counsel

Defendant contends trial counsel rendered ineffective assistance on two grounds:  (1) counsel "[f]ailed to object, clarify, or explain the nature of the

11

enhancement during the plea colloquy" and (2) counsel "failed to clarify that the weapon was not in [defendant's] possession and failed to challenge the legal validity of a § 12022.53(b) enhancement under those facts."

To establish ineffective assistance of counsel, defendant must show first, that his attorney's performance was deficient, and second, that those errors prejudiced him. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) To the extent defendant bases his claim of ineffective assistance of counsel on matters outside the record, the issue is more appropriately decided in habeas corpus proceedings. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.) However, to the extent the record sheds light on counsel's actions, no ineffective assistance appears.

Defendant asserts his trial counsel was ineffective, first on the ground that "counsel [f]ailed to object, clarify, or explain the nature of the enhancement during the plea colloquy." Defendant points to the trial court's observation that defendant "seem[ed] hesitant" at the start of the plea hearing, and argues that "[r]ather than pausing to ensure [he] understood, his counsel and the court moved forward." The record contradicts this claim. As discussed above, the court *did* pause to ensure defendant understood his plea and gave him time to discuss it with his attorney off the record. Afterwards, the court asked defendant if he had an adequate opportunity to discuss his plea with his attorney, and, referring to defendant's signed plea form, if he understood the rights he was waiving and the consequences of his plea and admission, including the maximum sentence he faced. Defendant replied "yes" to each question.

Defendant's claim of ineffective assistance of trial counsel is also based on counsel's "failure to challenge the firearm enhancement despite the

12

absence of any physical evidence." This claim is apparently predicated on defendant's sufficiency of the evidence claim, which in turn relies on materials outside of the record on appeal. Accordingly, defendant's claims that he received ineffective assistance of counsel on such grounds must be raised by way of a habeas petition. (See *People v. Mendoza Tello*, *supra*, 15 Cal.4th at pp. 266–267.) And, as explained above, we decline to treat defendant's appeal as such a petition.

In short, defendant's ineffective assistance claims on appeal must be rejected.

### Review of Record

In addition to reviewing the arguments set forth in defendant's supplemental brief, we have undertaken our own independent examination of the record and found no arguable error.

We did, however, find a minor clerical error in the abstract of judgment. At sentencing, the trial court ordered defendant to pay a court fine of $585 pursuant to section 672. However, the abstract of judgment notes that fine was imposed under a different statute (§ 1202.5). "The oral pronouncement of judgment controls over any discrepancy with the minutes or the abstract of judgment." (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) Accordingly, we will order the trial court to prepare a corrected abstract of judgment reflecting the fine in the amount of $585 was imposed under section 672. (See *ibid*.)

### DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A172535N)