Filed 10/31/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN PEDRO GUEVARA,<br><br>    Defendant and Appellant. | **[PUBLIC – REDACTS MATERIAL FROM SEALED RECORD]**<br><br>    A170530<br><br>    (Humboldt County<br>     Super. Ct. No. CR1000842A) |

In 2011, defendant Juan Guevara was found guilty of assault and other offenses after he attacked and threatened a witness in a murder investigation, and he received a prison sentence of 32 years to life that included various sentencing enhancements.  Eleven years later, the trial court recalled defendant's sentence pursuant to Penal Code section 1172.75,[1] held a resentencing hearing, and struck four invalid one-year enhancements.

On appeal, defendant contends his counsel at resentencing was ineffective, in that counsel failed to file a sentencing brief presenting evidence or argument in mitigation.  We agree, and therefore reverse and remand for resentencing.

### BACKGROUND

In 2010, police officers in the Hoopa Valley Tribal Police Department responded to a reported assault.  The victim informed the responding officers

---

[1]    All further undesignated statutory references are to the Penal Code.

1

that the three men who assaulted him were threatening his life because of his cooperation in a homicide investigation. The victim and a witness each identified defendant as one of the three attackers. For his part, defendant claimed it was the victim who had accused defendant of being a " 'rat' " in a murder investigation. According to defendant, he went to the victim's house to confront him about the allegation, but the victim came out armed with a bat so defendant hit him in self-defense. The assault left the victim with cuts on his head, a fractured rib, and temporary disruption to his kidney function.

In 2011, a jury found defendant guilty of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 1) and found true a great bodily injury enhancement (§ 12022.7, subd. (a)). The jury also found defendant guilty of threatening a witness (§ 140, subd. (a); count 2); assault (§ 240; count 3); making a criminal threat (§ 422; count 4); battery with serious bodily injury (§ 243, subd. (d); count 5); and misdemeanor battery (§ 242; count 6). The trial court subsequently found true the allegations that defendant had four prior prison terms, and it found that two of those prior convictions—for kidnapping (§ 207) and robbery (§ 211)—were "serious and violent [strike] convictions" under sections 667.5, subdivision (c) and 1192.7, subdivision (c). The court also determined that counts 1 and 4 of the current convictions were serious felonies.

At sentencing in 2011, the trial court considered defendant's request to dismiss the strike prior convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). The court declined to do so, noting it had reviewed the probation report, which described the underlying offenses, listed defendant's prior convictions and criminal history, and provided information about defendant's social history, family background, education, and mental and physical health. The court concluded defendant

2

did not fall outside of the spirit of the Three Strikes Law, and accordingly sentenced defendant as follows: on count 1, the court sentenced defendant to state prison for life with a minimum mandatory sentence of 25 years pursuant to section 667, subdivisions (b) through (i). The court imposed an additional three years for the great bodily injury enhancement (§ 12022.7, subd. (a)), and another four years for the four prison priors (§ 667.5, subd. (b)). The court also imposed a concurrent term of 180 days on count 6, and it imposed and stayed sentencing on counts 2, 3, 4, and 5 pursuant to section 654.

In 2022, the California Department of Corrections and Rehabilitation (CDCR) identified defendant as eligible for resentencing due to his prison priors, and the trial court ordered his resentencing. (See § 1172.75, subds. (b).) The court appointed counsel to represent defendant and tentatively ruled it would "delete 4 prison priors."

The resentencing hearing was originally set for October 7, 2022, but it did not occur until April 26, 2024, due in large part to continuances repeatedly requested by defense counsel to prepare a resentencing brief. In October 2022, the trial court granted a continuance "to allow [defense counsel] additional time to conduct legal research." In December 2022, the court continued the matter because counsel was "researching whether the defendant [was] entitled to a full resentencing." In February 2023, the matter was continued "to allow [defense counsel] to fully research the issue prior to re-sentencing." Defense counsel stated his intent to also file a statement in mitigation, and the court set a briefing schedule. In May 2023, the court rescheduled the hearing at defense counsel's request. In November 2023, the hearing was again rescheduled because defense counsel was

3

requesting "time to fully brief the issue," and defendant had "not been transported" to court.[2]

A year and a half after the court appointed the public defender to represent Guevera on resentencing, its patience began to wear thin. At a March 2024 hearing, the trial court admonished defense counsel, "you have blown through the briefing schedule a couple of times now." The court reminded defense counsel of its tentative ruling to strike the four prison priors and exhorted counsel that he "really need[ed] to file something" if he planned to ask for "additional relief." Counsel replied that he had received "quite a bit of material" from defendant which he was "in the process of turning into a *Romero*-type of sentencing brief." The March 2024 minute order indicated that "[s]hould [defense counsel] seek additional relief, a written filing will be needed." In early April 2024, the resentencing hearing was continued yet again, but the court declared there would be "[n]o more continuances."

Although the defense never filed a resentencing brief or statement in mitigation, the resentencing hearing ultimately occurred on April 26, 2024. At the hearing, defense counsel acknowledged his failure to file "a *Romero*-type motion or brief on resentencing" despite delaying the proceedings to do so. Counsel explained he was "in an ongoing jury trial, so I was going to make a request in the alternative. Either the Court put this out six weeks with a briefing schedule or that the matter be dropped from calendar without prejudice in that I bring a notice to motion, which then would effectively create a briefing schedule."

---

[2]  The hearing was rescheduled at least two other times because defendant was not present.

4

The trial court declined to delay the matter any further. The court observed that some of the prior continuances had been granted to allow briefing for a *Romero* motion, but "[n]othing [had] been filed"; other continuances were allowed so that defendant "could be present," and "[h]e [was] now present." "Mr. Guevara might have other remedies," the court observed, "but I am not going to continue this matter further." The court noted that defendant's *Romero* motion at his original sentencing had been denied, but acknowledged that defendant was "entitled to a resentencing where the Court will listen to argument." The court then concluded, "it is now time to do so a year and seven months later. Let's go."

In the hearing that followed, defense counsel's presentation was so brief that we quote it here in full. Counsel said: "Mr. Guevara has now spent 14 years in prison. He is actively participating in rehabilitative programs at CDCR. While I can't cite to the particular portions of his central file for the Court, it is a pretty clean central file, meaning that he is behaving himself in prison custody. As [his trial counsel] documented for the Court at sentencing following trial, Mr. Guevara is intellectually disabled. When he was free of custody, he was receiving social security disability for that. His sister, [ ], who resides in Crescent City and wrote a letter in support, would be very supportive of her brother if he were ordered released from prison custody if the Court were to strike the prior and resentence him. [¶] And I have an apology letter for the Court to consider. And I have more material that I had intended to submit to the Court. [¶] Showing the apology letter to [the district attorney] and asking him for it to be filed."

In opposing the striking of the strike priors, the People cited defendant's extensive criminal history and pointed out that defendant had been incarcerated "for almost the entire time between the 1982, 1984 prior

5

strikes and the [underlying] offense" because of his repeated parole violations and felony convictions.

The trial court agreed with the People, focusing almost entirely on defendant's criminal history. The court observed that even though the strike priors were "old," they involved kidnapping and robbery convictions, which are "particularly serious." Moreover, defendant had "repeatedly pick[ed] up new felonies and, in this case, new strikes." The court recognized it could no longer impose the prison priors, but apparently considered the convictions for those priors as demonstrating recidivism—i.e., "as returns to prison"—in ascertaining whether defendant fell within the spirit of the Three Strikes Law. In the court's view, the original sentence "reflect[ed] someone who is still within the gamut of the Three Strikes Law" and "was a fair consideration" of defendant and his actions in the underlying offenses, which involved "a joint beating of someone suspected to be a snitch to the point of unconsciousness." Recognizing "the lengthy sentence that [defendant] is facing," the court opined that the original sentencing court adopted a "good remedy" with its decision "to run multiple of the charges concurrent," and the court decided to "resentence him much as he was originally sentenced."

The court then struck the four one-year prison prior enhancements and pronounced sentence as follows: a Three Strikes sentence of 25 years to life in prison, plus three years for the great bodily injury enhancement, on count 1; 25 years to life on each of counts 2, 4, and 5, stayed pursuant to section 654; and 180 day sentences on the two misdemeanors—count 3 stayed pursuant to section 654, and count 6 to run concurrently. The court also awarded credits for "458 actual days, 68 conduct credits." Defendant appealed.

DISCUSSION

When a defendant's current judgment includes a prison prior enhancement rendered invalid under section 1172.75, subdivision (a),[3] "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) "By its plain terms, section 1172.75 requires a full resentencing," not merely the striking of "newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) This means the resentencing court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

At sentencing, defense counsel may present evidence and argument, orally or in writing. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) "[A] defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent." (*Ibid.*)

To prevail on a claim of ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

---

[3]    "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (§ 1172.75, subd. (a).)

7

We ordinarily presume trial counsel's actions and inactions fall "within the wide range of reasonable professional assistance" and reflect reasonable tactical decisions. (*Mai*, *supra*, 57 Cal.4th at p. 1009.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid.*) Even then, a defendant must also show "this deficient performance caused prejudice in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.)

Effective representation entails " 'diligent conscientious' " advocacy. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) In California, an attorney has a duty to "not . . . repeatedly, recklessly or with gross negligence fail to act with reasonable diligence," where " 'reasonable diligence' " means "act[ing] with commitment and dedication to the interests of the client and . . . not neglect[ing] or disregard[ing], or unduly delay[ing] a legal matter entrusted to the lawyer." (Rules Prof. Conduct, rule 1.3; see also American Bar Association Model Rules of Prof. Conduct, rule 1.3 ["A lawyer shall act with reasonable diligence and promptness in representing a client"].) Moreover, a criminal defendant is entitled to a reasonably competent attorney who makes "rational and informed decision[s] on strategy and tactics founded on adequate investigation and preparation." (*Ledesma*, at p. 215.) "If counsel fails to make such a decision, his action—no matter how unobjectionable in the abstract—is professionally deficient." (*Ibid.*; see also *Strickland v. Washington* (1984) 466 U.S. 668, 690 (*Strickland*) [implying

that counsel must make "all significant decisions *in the exercise of reasonable professional judgment* " (italics added)].)

Here, defense counsel's conduct did not meet professional standards of diligence. To recap, for over a year and a half, defense counsel requested continuances for the purpose of researching issues and filing a sentencing brief. A month before the hearing, the trial court admonished defense counsel that counsel "really need[ed] to file something" if he sought additional relief beyond the tentative ruling, and counsel affirmed his intent to file a "*Romero*-type of sentencing brief." But in the end, defense counsel filed nothing, despite his representation that he had "more material that [he] had intended to submit to the Court." His explanation for his latest instance of nonperformance—i.e., that he was "in an ongoing trial"—"affirmatively discloses counsel had no rational tactical purpose for the challenged . . . omission." (*Mai*, *supra*, 57 Cal.4th at p. 1009.)

The People counter that defense counsel did not perform deficiently because he made an oral presentation to the court. We are unpersuaded. Defense counsel's oral presentation was exceedingly brief. It mentioned some mitigating facts but was unaccompanied by any evidence other than the letter defendant himself had written. Nor did counsel draw the court's attention to any item of evidence already in the court file, although our review of that file reveals there was mitigating evidence that went unmentioned. And crucially, defense counsel advocated for no particular sentencing alternative and mentioned no statute or case that might have persuaded the court to adopt a lesser sentence, except in referring to the "*Romero*-type motion" he never made. In short, we conclude defense counsel was not exercising discretion in forgoing the filing of the requested resentencing brief. He simply failed, repeatedly over the course of 18 months,

9

to get around to it, and he similarly failed to present evidence or argument orally in favor of at least striking the enhancement that added three years to defendant's sentence.

Having demonstrated defense counsel's deficient performance, defendant must still "show that there is a reasonable probability" he would have achieved a more favorable outcome at the resentencing hearing, had his counsel filed an adequate resentencing brief. (*Strickland*, *supra*, 466 U.S. at p. 694; *Mai*, *supra*, 57 Cal.4th at p. 1009.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. (*Strickland*, at p. 694.) The standard is not met by "every error that conceivably could have influenced the outcome." (*Id*. at p. 693.) But on the other hand, the standard also does not require that a defendant show "counsel's deficient conduct more likely than not altered the outcome in the case." (*Ibid*.) "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." (*Id*. at p. 694.) In assessing prejudice, we are called on not to apply "mechanical rules," but to make a qualitative judgment as to whether the outcome "is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." (*Id*. at p. 696.)

Here, our confidence in the outcome is fatally undermined by counsel's failure to have marshaled the facts and the law on his client's behalf. We cannot know whether defendant would have obtained a more favorable result if not for counsel's inadequacy, but, importantly, defendant is not required to show he was entitled to a lower sentence in order to establish prejudice. (See, e.g., *In re Smith* (1970) 3 Cal.3d 192, 202 ["Petitioner need not establish that he was entitled to reversal in order to show prejudice"]; *People v. Cropper*

10

(1979) 89 Cal.App.3d 716, 721, fn. 6 ["Appellant need not establish that 'but for' counsel's inadequacy he inevitably would have achieved a favorable disposition"].) What we do know from this record is that the law allowed the court to choose a lesser sentence than the one it imposed, and that the court stated expressly that if defendant wanted to request that relief, his counsel needed to file a sentencing brief.

Of greatest consequence, the court could have dismissed at least one of defendant's strike priors and imposed a determinate sentence. (See *Romero*, *supra*, 13 Cal.4th 497.) Because the sentencing triad for the crime alleged in count 1 is two, three, or four years (§ 245, subd. (a)), defendant would have been released with credit for time served if he had been given a two-strike sentence. The court explained on the record why, in light of the evidence before it, the court would not take that course of action. But a more fulsome presentation by defense counsel could have produced a different result on the question of dismissing a strike prior. Even if we assume for purposes of argument that it would not have, there was a second discretionary decision the court could have made to defendant's benefit.

The court could have struck the great bodily injury enhancement imposed on count 1, thereby reducing defendant's sentence by three years to 25 years to life. Section 1385 directs that, except in circumstances not relevant here, a sentencing court "shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1) & (4).) Yet defense counsel did not even ask the court to consider whether the interests of justice would have been served by dismissing the enhancement in this case. Nor did the prosecutor, or the court before pronouncing sentence, so much as mention section 1385 or acknowledge that there was a discretionary decision to be made with regard to the enhancement.

11

If this were a case where no reasonable jurist would have found the interests of justice served by dismissing the enhancement, we would not find prejudice on this silent record. But it is not such a case. If the court had exercised its authority to strike the great bodily injury enhancement, defendant would still receive a life sentence and not be immediately eligible for parole. Under the circumstances reflected in this record, the sentencing judge in this case could reasonably have concluded a sentence of 25 years to life was enough.

For example, the judge could have determined that because defendant was already subject to the Three Strikes sentencing scheme, the interests of justice counseled against *also* imposing an enhancement that would extend the minimum on his life term to 28 years. When exercising discretion whether to strike a sentence enhancement, the court must consider whether multiple enhancements are alleged in a single case, or whether applying an enhancement would result in a sentence of more than 20 years. (§ 1385, subd. (c)(2)(B) & (C).) Neither of these statutory provisions *required* the sentencing court to strike the great bodily injury enhancement in this case because, for example, this portion of the statute applies to sentences involving multiple "enhancements," whereas defendant's sentence involved an "alternative sentencing scheme"—the Three Strikes law—and an enhancement. (*People v. Burke* (2023) 89 Cal.App.5th 237, 242–243; see also *People v. Olay* (2023) 98 Cal.App.5th 60, 66.) But defense counsel might usefully have reasoned by analogy in a sentencing memorandum that urged the court to strike the enhancement. Subdivision (c)(4) of section 1385 makes clear that "the circumstances listed in paragraph (2) are not exclusive and the court maintains authority to dismiss or strike an enhancement" in the interests of justice. (§1385, subds. (a) & (c)(4).) Counsel could also have

pointed out that, without striking the enhancement, defendant's sentence would be longer than 20 years *and* longer than the sentence for first degree murder, which is 25 years to life in the absence of special circumstances. (§ 190, subd. (a).)

The judge might also have struck the enhancement as a reasonable response to the evidence of defendant's intellectual disability and the abuse or neglect he suffered as a child. **[REDACTED]** Evidence of this type may be considered in mitigation when courts make discretionary sentencing decisions. (See, e.g., § 1170, subd. (b)(6)(A) [relevance of childhood trauma in determinate sentencing]; *Atkins v. Virginia* (2002) 536 U.S. 304, 318 ["diminished capacities" of persons with intellectual disabilities "do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability"].)

The judge might also have been influenced by the fact that defendant was eligible for a life sentence in this case only because of a crime defendant committed when he was barely 20 years old. Defendant committed his first strike prior in 1982, at the age of 20, and his second two years later, in 1984. Defendant was under 26 years of age when he committed these crimes, and thus a " 'youth' " for purposes of assessing mitigation in certain sentencing and parole contexts. (§§ 1016.7, subd. (b); 1170, subd. (b)(6)(B); 3051, subd. (a)(1).) Again, the point is not that these statutes required the sentencing court to strike the enhancement (or the strike priors), but only that competent defense counsel might have persuaded the court that if defendant was to receive a life sentence here because of crimes he committed as a youth, the court should at least exercise its discretion to strike the enhancement that would extend the sentence by three additional years.

13

Finally, the judge might have weighed the evidence of defendant's postconviction conduct, which was reportedly good. Defense counsel could usefully have reminded the court at resentencing that a court may "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5), see also § 1172.7, subd. (d)(3).) Defense counsel could also have requested a supplemental probation report, which would have provided the court with evidence of defendant's postconviction conduct. (Cal. Rules of Court, rule 4.411(a).) The record reflects that at the time of resentencing defendant was over the age of 60, and if defense counsel's representations are to be believed, while in prison for 14 years defendant was "actively participating in rehabilitative programs" and "behaving himself in prison custody." But counsel never produced evidence to support these representations, even though he admitted he had been collecting material he intended to submit.

The *only* indication we find in the record to suggest the trial court might have viewed with skepticism a request to strike the three-year enhancement is the judge's generic comment that the original sentence seemed "fair," and that the original judge's sentencing decision to "run multiple of the charges concurrent" was "a good remedy to the lengthy sentence" defendant was facing. Competent defense counsel might have successfully countered this line of thinking with evidence that defendant's intervening (i.e., postconviction) conduct justified taking a different course on

14

resentencing, or counsel might have prevailed with any of the other arguments above.

But specifically in response to the court's comment that the original sentencing judge's approach was a good remedy to the lengthy sentence, counsel could have pointed out that, with the exception of a 180-day sentence on a misdemeanor, the original sentencing court did *not* impose concurrent sentences on multiple charges to address the lengthy sentence defendant was facing. Rather, the original sentencing court—and then the resentencing court following in its footsteps—stayed sentences pursuant to section 654 for all the felonies other than count 1. This means the only discretionary sentencing decision the court could have made to "remedy" the lengthy prison sentence it remarked on, if it was not going to dismiss a strike prior, was to dismiss the three-year enhancement for great bodily injury.

To be clear, we do not conclude the sentencing judge should have dismissed the great bodily injury enhancement, nor even that the court likely would have done so if asked. We simply conclude on this record that it would have been reasonable for the court to have dismissed the enhancement, and that it is reasonably probable the court would have done so if defense counsel had diligently represented his client on resentencing. We know, because the sentencing judge said so on the record, that he was prepared to consider a lesser sentence than the one he ultimately imposed, but that to be persuaded he thought he needed the argument to be laid out in a sentencing brief. Defense counsel repeatedly failed to file that brief and did not otherwise ensure that the court was presented with evidence and argument as to why it should at least dismiss the three-year enhancement and sentence defendant to no more than 25 years to life. Considering all the circumstances, our confidence in the outcome of this resentencing proceeding is undermined by

15

counsel's deficient performance, and we must therefore reverse and remand for resentencing.

Our dissenting colleague appears not to dispute that defense counsel's conduct fell below professional standards of diligence. Instead of offering a possible satisfactory explanation for counsel's "deeply troubling" failure to file a resentencing brief, she faults our opinion "for disregarding defendant's burden to affirmatively demonstrate prejudice as an element of his ineffective assistance claim" and "for abandoning the fundamental presumption of correctness of the trial court's ruling." (Dis. opn. *post*, at p. 1.) Our response to this critique is twofold.

First, we do not ignore defendant's obligation to demonstrate prejudice, but follow *Ledesma* in relying on *Strickland*'s definition of prejudice as no more than " 'a reasonable probability that, absent [counsel's] errors, the sentencer' " would have chosen a more favorable sentencing option. (*Ledesma*, *supra*, 43 Cal.3d at p. 218.) The Court in *Ledesma* illustrates that this standard is hardly insurmountable, finding prejudice from counsel's failure to object to a prosecutor's questions and comments on the crucial issue of identity (*id.* at pp. 225–226), and from his failure to bring a motion to suppress evidence of an intercepted telephone call that "was not beyond challenge"—even though, "[h]ad [counsel] challenged the call, the prosecution may well have been successful" in having the evidence admitted. (*Id.* at p. 227.) There is no hint in *Ledesma* that a defendant cannot prove prejudice "based on facts already contained in the record and discretionary choices the court did not make."[4] (Dis. opn. *post*, at p. 4.)

_____

[4] The dissent also cites *People v. Bolin* (1998) 18 Cal.4th 297, 333 for this proposition, but *Bolin* did not address the prejudice required to establish

16

Second, we reject the dissent's attempt to employ a presumption of correctness here, where the issue is not whether the *court* properly discharged its duties (see Evid. Code, § 664 [*official* duty regularly performed]); the question is whether *counsel's* unprofessional conduct prejudiced the outcome of the case. The distinction is important. We do not fault the court for failing to consider a motion to strike that counsel did not make. And having established that counsel's representation fell below professional standards, we do not presume that the outcome of the proceeding would have been the same, had he properly discharged his duties. (See *Ledesma*, *supra*, at pp. 217–218; *Strickland*, *supra*, 466 U.S. at pp. 693–694.) The cases on which the dissent relies that apply a presumption of correctness do not involve allegations that counsel was ineffective. (See *People v. Mills* (2025) 114 Cal.App.5th 270; *People v. Myers* (1999) 69 Cal.App.4th 305; *People v. Carmony* (2004) 33 Cal.4th 367.) And *Ledesma*, which does address the topic, employs no presumption of correctness. (See *Ledesma supra*, 43 Cal.3d at pp. 217–227.)[5]

In light of our decision that defendant has established counsel's ineffectiveness, including prejudice, we need not address most of his other arguments on appeal. He contends the trial court erred in failing to conduct

___

ineffective assistance of counsel, except to recite the standard for prejudice articulated in *Strickland* and *Ledesma*.

[5] We also part company with the dissent on whether the court could have struck the enhancement in an exercise of its discretion, pursuant to section 1385, *subdivision (c)(1) and (4)*. In addition to disagreeing on the merits here, we think this issue falls within the challenge appellant has brought, which faults counsel broadly for failing to "advocate for the proper application of different sentencing alternatives" and asserts "there is a reasonable probability that the trial court would have exercised its discretion to strike one of the strike priors for instance, or to *take another action that would have meaningfully changed appellant's sentence*." (Italics added.)

17

a full resentencing hearing, in that it failed to address the possibility of dismissing the great bodily injury enhancement under section 1385, subdivision (c). And he contends the trial court failed to exercise informed discretion when it sentenced him without first obtaining information about his postconviction rehabilitation. In our view, these issues are more appropriately addressed as aspects of the prejudice flowing from counsel's deficient performance. Having reversed on that basis, we need not address these arguments. But in the interests of judicial economy we do address one final challenge defendant brings on appeal, as the issue may recur on remand.

Defendant contends, and the People concede, that the trial court failed to award defendant the correct number of custody credits. The trial court simply restated the number of credits awarded at the original sentencing, whereas the law requires that at resentencing defendant be awarded all the actual time he has served as of the resentencing date. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37, 41; *People v. Dean* (2024) 99 Cal.App.5th 391, 397.) We trust the court will apply the proper rule on remand.

## DISPOSITION

The judgment following resentencing is reversed and the matter is remanded for resentencing. The Clerk of this Court is directed to send a copy of this decision to the State Bar of California and to defendant's counsel of record at the resentencing hearing. (See Bus. & Prof. Code, § 6086.7, subds. (a)(2) & (b).)

18

TUCHER, P.J.


I CONCUR:


PETROU, J.

*People v. Guevara* (A170530)

I respectfully dissent.

In this appeal, the majority reports defense counsel to the State Bar, concluding he rendered ineffective assistance in failing to file a resentencing brief that might have persuaded the trial court to dismiss one of defendant's strike priors or his great bodily injury ("GBI") enhancement. Like the majority, I find it deeply troubling that counsel told the court he would file a resentencing brief, obtained multiple continuances so that he could do so, and then ultimately failed to file a brief without offering a good reason. Though these circumstances might aid in establishing an ineffective assistance claim in a habeas corpus proceeding, I cannot join the majority's conclusion that prejudice resulting from counsel's omission may be found on the limited record before us. The record on appeal discloses no basis for abandoning the fundamental presumption of correctness of the trial court's ruling or for disregarding defendant's burden to affirmatively demonstrate prejudice as an element of his ineffective assistance claim. I would affirm the trial court's refusal to dismiss any of defendant's strike priors or his GBI enhancement.

The standard for showing ineffective assistance of counsel has long been settled. In assessing such claims, courts " 'consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms *and* whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " (*People v. Gray* (2005) 37 Cal.4th 168, 206–207, italics added, citing *Strickland v. Washington* (1984) 466 U.S. 668, 694, *People v. Ledesma* (1987) 43 Cal.3d 171, 217 (*Ledesma*).) Because a defendant must establish both that counsel performed deficiently and that the deficient performance was prejudicial, an ineffective assistance claim may be denied solely for lack of prejudice. (*In re Tellez* (2024) 17 Cal.5th 77, 88.)

1

Critically, prejudice "must be affirmatively proved." (*People v. Bolin* (1998) 18 Cal.4th 297, 333; *Ledesma*, at p. 217.)

Though overlooked by the majority, defendant's appeal attempts to affirmatively demonstrate prejudice exclusively on the ground that "*the record contains specific facts* showing that mitigation evidence existed and would have been available to the court had defense counsel filed a sentencing brief." (Italics added.) Emphasizing the "wealth of mitigating information" contained "[i]n the original 2011 probation report as well as in the record generally,"[1] defendant contends there is a reasonable probability he would have received a more favorable outcome "given the number of ameliorative changes in the sentencing law . . . , the general trend toward a more holistic approach to sentencing, *and the detailed mitigating facts contained in the record.*" (Italics added.) But defendant's reliance on "the probation report" and "the record generally" does not—indeed, cannot—affirmatively establish prejudice. Why? Because, as the record establishes, the trial court had received the probation report, and defense counsel's presentation at the resentencing hearing otherwise addressed all the purported mitigating information on which defendant's appeal relies.

That the trial court had before it all such information dooms defendant's ineffective assistance claim. On appeal, we are duty-bound to presume the court considered all information contained in the record. (Evid. Code, § 664; *People v. Myers* (1999) 69 Cal.App.4th 305, 310.) And in the absence of an affirmative showing to the contrary, we must presume it

---

[1] Such information included defendant's claimed intellectual disability and childhood trauma, his letter of apology, his good behavior in prison and his active participation in rehabilitation programs, and letters of support from his sister and community members.

properly applied the law and all relevant aggravating and mitigating factors. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*); Cal. Rules of Court, rule 4.409.) As indicated, the record reflects the trial court received the detailed probation report, defense counsel's oral presentation of mitigating information (which the court received without any objection from the People), and the People's argument opposing any dismissal. Under these circumstances, there appears no factual or legal basis for concluding that, without a brief from counsel, the trial court could not and did not rule with a full appreciation of the record or of the longstanding law governing the dismissal of prior strike convictions and enhancements under Penal Code section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

At bottom, the trial court is owed far more credit than the majority is willing to allow. For its part, the majority speculates the trial court "could have dismissed at least one of defendant's strike priors and imposed a determinate sentence" if only counsel had filed a resentencing brief with "a more fulsome presentation" of the evidence and the interests of justice. (Maj. opn., *ante*, at p. 11.) But it is well settled that "[t]he Court of Appeal does not reverse orders on speculation." (*People v. Mills* (2025) 114 Cal.App.5th 270, 877 (*Mills*) [rejecting the defendant's contention that "it is reasonably probable" the court would have stricken a remaining strike had it correctly understood that a "two striker" was ineligible for elderly parole], petn. for review pending, petn. filed October 10, 2025, S293428.) The majority's decision to do so is problematic and unsound.

A defendant is entitled to be sentenced by a trial court that "has an 'informed discretion' of the alternatives it has before making a sentence decision." (*Mills*, *supra*, 114 Cal.App.5th at p. 877, and cases cited.) The

3

majority, however, presupposes the trial court could not and did not gain an informed perspective of the aggravating and mitigating circumstances given the absence of a brief. The majority does so, even though the record establishes that the court received and presumably considered all relevant information in the probation report as well as all the information presented at the hearing, without any indication that it misunderstood or misapplied the law. Adhering to the familiar presumptions that govern our review, I see no basis for concluding that, but for defense counsel's failure to file a brief, the trial court could not and did not adequately understand its resentencing authority. Presuming, as we must, that the court did its job correctly, it is evident that defendant cannot meet his burden to "affirmatively prove[]" prejudice based on facts already contained in the record and discretionary choices the court did not make. (*People v. Bolin*, *supra*, 18 Cal.4th at p. 333; *Ledesma*, *supra*, 43 Cal.3d at pp. 217–218.)

Moreover, the majority is demonstrably mistaken in concluding it is reasonably probable that the trial court would have granted relief under *Romero* or section 1385, if only defense counsel had delivered "a more fulsome presentation." (Maj. opn., *ante*, at p. 11.) On this score, it bears emphasizing that our review is limited to the facts appearing in the appellate record, and we may not speculate as to what other material counsel "intended to submit" to the court (maj. opn., *ante*, at p. 14) or what other facts and arguments counsel might have "marshaled" (maj. opn., *ante*, at p. 10). (*Mills*, *supra*, 114 Cal.App.5th at p. 877.) Unlike the majority, even defendant limits his prejudice showing to "the facts in the probation report and the record generally." And that is the correct course, as the existence of any additional facts or materials is properly explored in a habeas corpus proceeding where such unsubmitted materials could at least be identified and meaningfully

4

assessed for their relevance and weightiness in a prejudice inquiry. (*People v. Avena* (1996) 13 Cal.4th 394, 418–419.)

As it stands, there is nothing in the record on appeal indicating that defense counsel actually knew or should have known of additional relevant information and accompanying arguments that could have swayed the trial court to grant relief. But based on the probation report and the unobjected-to mitigating information presented during the hearing, it is near certain that any dismissal of a strike prior or the GBI enhancement would have been an abuse of discretion. (See *People v. Williams* (1998) 17 Cal.4th 148, 163 [reversing trial court's dismissal of strike prior because there was nothing favorable to defendant about his current or prior convictions or his background, character, or prospects].) I shall explain.

In ruling on a motion for relief from the Three Strikes law, " 'the court in question must consider whether, in light of the nature and circumstances of [a defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) "[T]he circumstances must be '*extraordinary* . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack.' " (*Id.* at p. 378, italics added.)

Here, the record confirms that defendant's case is far from extraordinary. His documented criminal record is lengthy and without extended gaps: In April 1982, when he was weeks shy of turning 20 years

5

old, defendant was convicted of felony robbery and burglary. Some 16 days after he was released on parole in March 1984, defendant committed misdemeanor possession of a concealed dagger and received a 30-day jail sentence. Undeterred, defendant committed felony kidnapping the next month, resulting in a 13-year prison term and his release on parole in late December 1990. Though he avoided another felony conviction until 1995, this five-year period was marked by his commission of misdemeanors on three separate occasions—including unlawfully possessing a switchblade knife and distributing hypodermic needles as an unlicensed nonresident distributor— for which he served time in jail. In 1995, defendant suffered his third felony conviction, for stealing a vehicle. At some point he was released on parole, but then he was received by the California Department of Corrections for four separate parole violations occurring in February 2002, July 2002, December 2002, and February 2003. In February 2003, defendant suffered a fourth felony conviction, for transporting a controlled substance, as well as a conviction for fleeing the police in violation of Vehicle Code section 2800.2. Upon his release, he committed two more parole violations in April 2006 and April 2007. Defendant was convicted of another misdemeanor in 2009, for possession of a hypodermic needle.

On February 9, 2010, defendant committed the crimes that led to his Three Strikes sentence. In the words of the trial court, the underlying felony offense involved "a joint beating of someone suspected to be a snitch to the point of unconsciousness." But the details in the record more fully capture the seriousness and calculated viciousness of defendant's crimes: the victim was a witness cooperating in a homicide investigation of defendant's former prison cellmate. Defendant and his two stepsons went to the victim's house, coaxed the victim out, and proceeded to beat him. During the beating, the

victim was struck in the head with a shovel and lost consciousness; he also sustained a fractured rib and temporary dysfunction of his kidneys. When the victim's girlfriend tried to help the victim, defendant assaulted her and threatened to kill her barking dogs unless she quieted them. Defendant, who was armed with a knife, also threatened to kill the victim and demanded that he leave the area.

Aside from exhibiting a credulous belief in the power of spirited advocacy, the majority fails to meaningfully explain how the particulars of defendant's background, character, and prospects, when considered alongside the nature and circumstances of the present offenses and his extensive criminal history, could lead a reasonable jurist to dismiss one of defendant's strike priors in the notion that he falls outside the spirit of the Three Strikes law. I certainly cannot. Ever since he was first convicted of a felony in 1982, defendant has been basically unable to remain crime- or custody-free. Between his felony convictions, he repeatedly committed misdemeanors and parole violations. Defendant was 47 years old when he committed the instant felony, and he involved his two stepsons in a brutal assault of a witness to a murder committed by a former prison cellmate. Nothing about this crime or defendant's history leading up to it portends particularly promising prospects, and the majority merely hypothesizes that counsel could have marshaled additional facts in support of defendant's reformed character. But granting relief based on counsel's failure to file a resentencing brief requires that defendant additionally demonstrate prejudice resulting from counsel's omission. And it is precisely because the record here offers no clue as to what information counsel intended to present or what additional mitigation or arguments he would have marshaled, that a finding of prejudice cannot be gleaned in this appeal. Suffice it to say, based on the totality of the record,

including the probation report and all the unobjected-to mitigating information presented at the hearing, there appears no basis for any reasonable jurist to conclude that defendant's circumstances are so " 'extraordinary' " as to deem him outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Additionally, the majority relies on section 1385, subdivision (c)(2) ("section 1385(c)(2)"), for its theory that the trial court "could have struck the great bodily injury enhancement." (Maj. opn., *ante*, at p. 11.)[2]  While seemingly acknowledging that section 1385(c)(2) applies only in the context of enhancement dismissals and not strike prior dismissals (see *People v. Burke* (2023) 89 Cal.App.5th 237, 244; *People v. Olay* (2023) 98 Cal.App.5th 60, 67), the majority proffers the novel prospect that the factors listed in that provision could properly support dismissing the GBI enhancement if the Three Strikes law is treated like an enhancement (maj. opn., *ante*, at pp. 12–13).  I cannot agree.

First and foremost, the majority's reasoning that a trial court may dismiss an enhancement when it accompanies a lengthy Three Strike sentence appears to be an end-run around the case law establishing that the Three Strikes scheme is not an enhancement.  (E.g., *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338.)  And by itself, the GBI enhancement does not meet any of the criteria for dismissal under section 1385(c)(2).

---

[2]  Conspicuously, defendant's appeal does not argue his counsel performed deficiently by failing to seek dismissal of the GBI enhancement. Even assuming the scope of his ineffective assistance claim might be understood as extending to such omission, the record contains no affirmative showing that counsel even planned to seek dismissal of the GBI enhancement in a resentencing brief.  That counsel might not have intended to do so would have been a reasonable tactical decision because, as I will explain, such a dismissal would not have been appropriate.

Specifically, subparagraph (B) of section 1385(c)(2) (regarding "[m]ultiple enhancements") has no application to defendant's sentence because the GBI enhancement was his only enhancement. Nor does defendant's three-year sentence for the GBI enhancement implicate subparagraph (C) ("application of an enhancement could result in a sentence of over 20 years"), because his 25-year-to-life sentence was solely the result of the Three Strikes law.

Moreover, there appears no case law supporting the majority's supposition that a decision to dismiss an enhancement under section 1385(c)(2) may be predicated on defendant's youth when he committed a strike prior. Rather, subparagraph (G) of section 1385(c)(2) provides that the relevant consideration is whether a "juvenile" offense "trigger[ed] the enhancement . . . applied in the current case." (§ 1385(c)(2)(G).) That provision is inapplicable here because a juvenile offense did not trigger defendant's GBI enhancement.[3] In this regard, the majority relies on the Legislature's express determination that the definition of a "youth" for the purposes of plea negotiations (see § 1016.7, subd. (b)) should guide court discretion in imposing determinate sentencing under section 1170, subdivision (b)(6)(B). (Maj. opn., *ante*, at p. 13.) But the Legislature's silence as to whether that definition should also guide court discretion in considering whether to dismiss an enhancement under section 1385(c)(2)(G) undercuts the majority's reliance on those other statutes.

---

[3] Even assuming, generously, that subparagraph (G) of section 1385(c)(2) could be read as allowing a court to consider a juvenile-committed strike prior as a mitigating circumstance, it is undisputed that defendant was not a "juvenile" when he committed his strike priors.

9

The majority is also wrong that dismissing the GBI enhancement would be a "reasonable response" to the evidence of defendant's intellectual disability and childhood trauma, at least not without more. (Maj. opn., *ante*, at p. 13.) Subparagraphs (D) and (E) of section 1385(c)(2) provide that the court must consider whether the current offense "is *connected to* mental illness" or "is *connected to* prior victimization or childhood trauma," respectively. (Italics added.) For purposes of section 1385(c)(2), a court may only determine an offense is "connected to" mental illness or childhood trauma, "if, after reviewing any relevant and credible evidence" the court concludes that the defendant's mental illness or childhood trauma "*substantially contributed to* the defendant's involvement in the commission of the offense." (§ 1385(c)(5), (6), italics added.) Here, the record contains no such causal evidence, nor does it suggest counsel knew or should have known of facts showing such a nexus. Meanwhile, defendant's appellate briefing likewise presents no cogent argument connecting the dots.

I acknowledge that trial courts have discretion to consider unenumerated mitigating circumstances. (§ 1385(c)(4).) But evidence of intellectual disability and a troubled past, standing alone, does not suffice as a basis for relief. Rather, defendant must show that such circumstances *mitigate* his culpability for purposes of his punishment. (E.g., Cal. Rules of Court, rule 4.423(b)(2) [circumstance in mitigation includes "[t]he defendant was suffering from a mental or physical condition *that significantly reduced culpability for the crime*" (italics added)].) Again, the record on appeal contains no facts supporting such a showing. Similarly, the circumstance that defendant was 19 and 21 years old when he committed the two strike priors does not mitigate his culpability for the two felonies he committed when he was 33 and 40 years old. Nor, of course, does it mitigate the violent

10

felony offense which triggered the GBI enhancement that he committed when he was 47 years old.

The majority's point that defense counsel could have requested a supplemental probation report does nothing to establish prejudice because no one knows what would have been in it.[4] Again, this is why the appropriate route for defendant's ineffective assistance challenge is to initiate a habeas corpus proceeding. In a habeas corpus proceeding, defendant would have the opportunity to go beyond the limited record on appeal and to plead and prove specific facts supporting a finding of counsel's deficient performance and resulting prejudice. (*People v. Avena, supra,* 13 Cal.4th at p. 419.) At the same time, defense counsel, experts, and others would have an opportunity to present evidence that either supports or counters defendant's claim of ineffective assistance. At the very least, defense counsel would not be reported to the State Bar for claims in which a developed record does not support a finding of unprofessional conduct and resulting prejudice.

Finally, the majority's prejudice analysis finds no purchase in *Ledesma, supra,* 43 Cal.3d 171, which vacated a judgment of conviction in a habeas corpus proceeding. In *Ledesma,* the Supreme Court had issued an order to show cause and appointed a referee to take evidence and make findings of fact and conclusions of law regarding the petitioner's ineffective assistance of counsel claim, which was based on numerous claimed instances of

---

[4] The trial court was not required to order an updated report because defendant was ineligible for probation due to his prior strike conviction. (§§ 667, subd. (c)(2), 1170.12, subd. (a)(2); *People v. Campbell* (2023) 98 Cal.App.5th 350, 385.) Though a defendant's failure to request a supplemental report results in the " 'forfeiture of the right to object to the absence of such a report on appeal' " (*Campbell,* at p. 385), the majority cites no case law suggesting that the failure to request a supplemental report, in and of itself, constitutes ineffective assistance of counsel.

11

inadequacy. (*Id*. at p. 176.) The reference hearing took approximately nine months to complete, and the record of the evidence and argument presented at the hearing filled 30 volumes and exceeded 4,300 pages. (*Id*. at p. 193.) The referee "filed a lengthy and exhaustive report," which contained "detailed findings and conclusions" that were "directly responsive" to the court's questions regarding the claimed deficiencies and prejudicial impact of counsel's performance. (*Id*. at p. 206.) Given the obvious contrast between the well-developed habeas corpus record in *Ledesma* and the limited nature of the appellate contentions and record here, the majority's reliance on *Ledesma* is misplaced. Indeed, *Ledesma* illustrates precisely why habeas corpus is the appropriate vehicle for assessing both elements of an ineffective assistance claim.

In sum, the record on appeal provides no basis for attributing prejudice to defense counsel's failure to file a resentencing brief. Given defendant's lengthy criminal history and the brutality of the underlying offense, it is highly doubtful that any reasonable court would find that defendant fell outside the spirit of the Three Strikes law, or that the interests of justice support a shorter sentence, due to the mitigating information identified by the majority, including defendant's good behavior in the controlled environment of a prison. I see no reason to disturb the trial court's determination that the "original sentence was a fair consideration of Mr. Guevara and the actions in this case."

FUJISAKI, J.

*People v. Guevara* (A170530)

12

Trial Court:        Humbolt County Superior Court

Trial Judge:       Hon. Kaleb V. Cockrum

Counsel:           Reed Law Partners, Courtney Reed, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Shannon Chase, Deputy Attorney General for Plaintiff and Respondent